**GREEN COUNTRY MOBILEPHONE, INC., and South Texas Mobilephone, Inc., Appellants,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**LDS Cellular, Inc., Intervenor.**

**No. 84–1226.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 7, 1985.

Decided June 21, 1985.

Jerrold Miller, Washington, D.C., for appellants. Mark E. Fields, Washington, D.C., entered an appearance for appellants.

John P. Greenspan, Counsel, F.C.C., Washington, D.C., with whom Jack D. Smith, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel and Roberta L. Cook, Counsel, F.C.C., Washington, D.C., were on the brief, for appellee.

John Q. Hearne, Washington, D.C., was on the brief for intervenor LDS Cellular, Inc.

Before WRIGHT, MIKVA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellants challenge the Federal Communications Commission's refusal to accept their applications to provide cellular radio service. The FCC returned the applications as unacceptable for filing because they arrived too late. Pursuant to its regulations, the FCC closed its doors on the day of the deadline at 5:30 p.m.; appellants' applications apparently arrived sometime between 5:30 and 5:33. In the circumstances of this case, we find that the Commission abused its discretion by refusing to grant a waiver from the deadline.

I.

Cellular radio is a new technology for allowing people to carry on telephone conversations while riding in automobiles. In 1981, the FCC called for applications from companies interested in providing cellular radio service on a common carrier basis. *See Cellular Communications Systems, Report and Order,* 86 F.C.C.2d 469 (1981); *Memorandum Opinion and Order on Reconsideration,* 89 F.C.C.2d 58 (1981). For the thirty largest geographic markets, applications were to be filed by June 7, 1982; applications for the thirty next-largest markets were to be due on September 7, 1982. *See* 89 F.C.C.2d at 87–88. The latter deadline was later extended to November 8, 1982. *See Memorandum Opinion and Order on Further Reconsideration,* 90 F.C.C.2d 571, 580 (1982).

Appellants Green Country Mobilephone and South Texas Mobilephone are commonly owned corporations that wished to provide cellular radio service respectively in Tulsa, Oklahoma, and San Antonio, Texas. Both of these communities are in the second group of thirty markets. Green Country and South Texas started work on their applications sometime in July 1982 and completed them on November 8.

It is the events of that date that gave rise to this litigation. The applications were completed and signed in Washington at the offices of appellants' counsel. They were then taken across the street to a commercial photocopy service. The San Antonio application was delivered to the service at about 2:45 in the afternoon; the Tulsa application arrived slightly earlier. Appellants and their counsel planned to collate the copies and to hand deliver them along with the originals to the FCC before the Commission's scheduled closing time of 5:30. *See* 47 C.F.R. § 0.403 ("The main offices of the Commission are open from 8:00 a.m. to 5:30 p.m., Monday through Friday, excluding legal holidays."). The Commission is located approximately two and a half blocks from the offices of appellants' counsel.

Unfortunately, an equipment malfunction delayed the duplicating process by about fifteen minutes, and the San Antonio application was not returned by the photo-

copy service until close to 5:00. Once collation was completed, an attorney left for the FCC with both applications. Appellants claim, and the government does not deny, that he arrived at the Commission no later than 5:33.

The applications were to be filed at the office of the Secretary, located on the second floor of the FCC building. Although appellants contend that the public is generally allowed unrestricted access to the building's elevators for a reasonable period beyond the official closing time, at or about 5:30 on November 8 the Secretary and the Managing Director of the Commission instructed a guard stationed in the lobby not to admit anyone else with applications. The precise time of this instruction is not completely clear; the Commission asserts that it closed its doors exactly at 5:30, but appellants suggest that the clock in the lobby may have been several minutes fast.

In any event, it appears that at 5:30 a line of applicants remained outside the Secretary's office on the second floor, and that the office stayed open until well after 5:30 in order to allow those in line to file their applications. Nonetheless, when the attorney carrying appellants' applications arrived at the building, the guard denied him entry. The Green Country and South Texas applications were filed early the following morning, accompanied by a petition for acceptance *nunc pro tunc*. On January 24, 1983, the Common Carrier Bureau ruled against accepting the tardy applications; the Commission affirmed that ruling in a memorandum opinion and order issued on May 15, 1984.

## II.

The Commission's reasoning, simply stated, is that rules are rules.

Applicants [South Texas] and Green Country argue that their filings were at most a few minutes late. That may be, but "[t]here must be some point in time when the Commission can close the door to new parties...." The applicable rules and orders established 5:30 p.m., November 8, 1982 as the cut-off time, and all

applicants were expected and required to abide by the ruling. "If we were to accept [applicants'] argument, we would have no basis for determining when a competing application has been filed 'too late.'" Acceptance of petitioners' argument would foreclose the strict enforcement of our cut-off rules because that argument would be available in almost every instance where the Commission is presented with a late-filed application. This would mean that the Commission would consistently have to expend resources on case-by-case waiver requests and never be certain that the processing of a defined group of applicants could begin without disruption. Such potential disruption does not further the public interest.

*Green Country Mobilephone, Memorandum Opinion and Order* at 7 (May 15, 1984).

■ We cannot quarrel with the validity of the Commission's concerns. We reverse the Commission not because the strict rule it applied is inherently invalid, but rather because the Commission has invoked the rule inconsistently. We find that the Commission has not treated similar cases similarly.

Even appellants concede that the FCC has discretion to apply its 5:30 deadline strictly if it so decides. We will not second-guess a reasoned determination by an agency that the advantages of rigidity outweigh the disadvantages in a given procedural circumstance. *See NLRB v. Washington Star Co.*, 732 F.2d 974, 977 (D.C. Cir.1984). On the other hand, once an agency agrees to allow exceptions to a rule, it must provide a rational explanation if it later refuses to allow exceptions in cases that appear similar. A "sometime-yes, sometimes-no, sometimes-maybe policy of [deadlines] cannot ... be squared with our obligation to preclude arbitrary and capricious management of [an agency's] mandate." *Id.*

■ We agree with appellants that the FCC has failed to offer a reasonable dis-

tinction between this case and occasions in the past when waivers of filing deadlines have been granted. In particular, the Commission's refusal in this case to accept applications tendered two or three minutes late appears inconsistent with its decision in *Caldwell Television Associates, Ltd.,* 53 Rad.Reg.2d (P & F) 1686 (1983), to accept an application that arrived one day late.

In *Caldwell,* an applicant for a new commercial television station delivered its application to an overnight courier service the day before the deadline. Next-day delivery to the Commission was prevented by dense fog that closed the airport at one of the courier's intermediate stops; the application arrived at the Commission the morning following the due date.

The FCC began its analysis in *Caldwell,* as it did in the case now before us, by reiterating its general policy regarding application deadlines:

Our cut-off rules are to be strictly enforced with waivers granted only in unusual and compelling circumstances. A prerequisite to such a waiver is that an applicant demonstrate that it has exercised reasonable diligence. Any tardiness must be attributable to circumstances beyond the applicant's control.

*Id.* at 1687; *Green Country Mobilephone, Memorandum Opinion and Order* at 3–4.

The Commission found this standard met by the applicant in *Caldwell:*

In this case, we find that CTA did exercise reasonable diligence to assure timely delivery of its application. On the day before the cut-off date, CTA delivered its application to [the courier] in sufficient time for that company to deliver it to the Commission the next day under normal circumstances. While it may have been more prudent for CTA to have allowed extra time for unforeseeable delays in delivery, certainly severe weather conditions in another part of the country would not have been reasonably anticipated and constitute circumstances beyond the applicant's control. Consequently, we believe that "unusual and compelling

circumstances" have been demonstrated to warrant waiver of [the deadline]. . . .

53 Rad.Reg.2d (P & F) at 1687.

The Commission's order in this case attempted to distinguish *Caldwell* on the basis that "the last-minute failure of a copy machine," in contrast to the delay of an airplane by adverse weather, "can be reasonably anticipated, and contingency plans or actions can be put into effect to assure timely submission of applications." *Id.* at 4. We can find no principled distinction between the two causes of delay. Photocopy machines may or may not be as fickle as the weather, but even attorneys and business people are presumably as familiar with bad weather as they are with duplication difficulties. We cannot approve an "airplane" rule or a "weather" rule as an example of consistent, reasoned decision-making. If an overnight delay is excusable because an airplane was unexpectedly caught in fog, we can see no reason why a three-minute delay should not be excusable because a duplicating machine unexpectedly broke down. This is especially so given the appellants' uncontested assertion that in the past the FCC has routinely accepted applications filed shortly after 5:30 p.m.

In general, an agency's refusal to grant a waiver will not be overturned unless the agency's reasons are "so insubstantial as to render that denial an abuse of discretion." *E.g., Thomas Radio Co. v. FCC,* 716 F.2d 921, 924 (D.C.Cir.1983). Although this burden is a heavy one, *see WAIT Radio v. FCC,* 459 F.2d 1203, 1207 (D.C.Cir.), *cert. denied,* 409 U.S. 1027, 93 S.Ct. 461, 34 L.Ed.2d 321 (1972), we made clear in *Washington Star* that it is carried when an agency arbitrarily waives a deadline in one case but not in another. That is the situation here. Accordingly, we vacate the Commission's decision and remand this case for further proceedings consistent with our opinion.

### III.

We are aware that our action today may delay somewhat the availability of cellular radio service in Tulsa and San Antonio by

disrupting settlements negotiated among the applicants in each of the two markets. Since appellants were not included in the settlements, some renegotiation or administrative resolution will be necessary. It is obvious that appellants' rights cannot be compromised simply because other applicants decided to conduct negotiations on the assumption that appellants would not prevail.

Again, we emphasize that the FCC is not required to bend its deadlines at all. If the Commission so chooses, it may prospective-ly overrule *Caldwell.* So long as *Caldwell* remains law, however, it may not be arbitrarily ignored or limited. If there are to be exceptions, they must be administered in a rational manner.

*Reversed and remanded.*