UNIVERSAL STUDIOS LLLP,
et al., Plaintiffs,

v.

Marybeth PETERS, in her official ca-
pacity as Register of Copyrights,
et al., Defendants.

No. CIV.A.03–1082(RMC).

United States District Court,
District of Columbia.

March 24, 2004.

Randolph D. Moss, Wilmer Cutler Pickering LLP, Washington, DC, for Plaintiffs.

James J. Gilligan, U.S. Department of Justice, Washington, DC, for Defendants.

## MEMORANDUM OPINION [1]

COLLYER, District Judge.

This case asks whether Marybeth Peters, United States Register of Copyrights, properly refused to accept a claim for statutory royalties filed by Universal City Studios LLLP and Universal City Studios Productions LLLP (collectively "Universal") because the claim arrived in Washington, D.C. on August 3, 2001, and Universal has no date stamp from the U.S. Postal Service to show that it had been mailed by July 31, 2001. Finding that Ms. Peters acted properly, the Court will grant her motion for summary judgment [2] and deny Universal's cross-motion for summary judgment. [3]

### Background Facts

A. *Statutory Scheme*

Cable television operators and satellite carriers that re-transmit certain broadcast television signals must periodically deposit prescribed fees with the Copyright Office of the United States Library of Congress

---

1. Also pending before the Court is a case that presents similar issues and is in the same procedural posture, *Metro Goldwyn–Mayer Studios, Inc. v. Peters*, No. 03–179(RMC), 2004 WL 609290, 309 F.Supp.2d 48 (D.D.C. 2004). The Court is contemporaneously and separately issuing decisions in both of these cases. For ease of review, should it be sought, a full decision is issued in each case, although somewhat duplicative.

2. Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment, which the Court treats as a Motion for Summary Judgment.

3. Universal has also filed a motion requesting a hearing on the pending cross-motions for summary judgment in order to "present its case to the Court and to address any question the Court may have about the difference between the two cases." Pltfs.' Unopposed Request for Oral Argument at 2. Because the pleadings and the entire record provide a full explication of the issues and arguments, the request for oral argument is denied. *See* LCvR 7(f).

("Copyright Office" or "Office") for distribution to those who own the copyrights for the re-transmitted programming.[4] During the month of July in each year, copyright holders may file claims to these royalties with the Librarian of Congress, in accord with regulations issued by the Copyright Office.[5]

This statutory scheme was established in 1976, when Congress directed cable operators to pay royalties. Because it would be impractical to require individual negotiations over every re-transmission, Congress established a compulsory license allowing cable systems to re-transmit broadcast signals, conditioned on payment of a statutory royalty. Copyright Act of 1976, Pub.L. No. 94–553 § 101, 90 Stat. 2541, 2551–55 (1976) (*codified as amended* at 17 U.S.C. §§ 111(c), (d)); *see also Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am., Inc.*, 836 F.2d 599, 602–03 (D.C.Cir.1988). In 1988, Congress applied the same rationale to require satellite carriers to pay the same kinds of licensing fees. *See* 17 U.S.C. § 119.

The Act initially established the Copyright Royalty Tribunal to distribute the royalties collected.[6] The Tribunal first adopted claims-filing regulations in 1978, according to which claims were timely if mailed "prior to the expiration of the statutory period and ... accompanied by a certificate stating the date of [mailing]." 43 Fed.Reg. 24528, 24529 (June 6, 1978). Ten years later, the Tribunal adopted new rules providing that claims would "be considered timely only" if they were "received ... during the month of July" or they bore "a July U.S. postmark." 54 Fed.Reg. 12614, 12619 (Mar. 28, 1989). In 1991, the Tribunal added new language stating that "[c]laims dated only with a business meter that are received after July 31 will not be accepted as having been filed during the month of July." 56 Fed.Reg. 2437, 2438 (Jan. 23, 1991).

In 1993, Congress abolished the Tribunal and transferred its functions to the Librarian, the Register, and *ad hoc* copyright arbitration royalty panels.[7] The Copyright Office adopted interim rules governing applications for royalty claims in May 1994; the interim rules retained the requirement that claims must be either received during the month of July or bear a July U.S. postmark. *See* Interim Regulations, 59 Fed.Reg. 23964, 23993 (May 9, 1994).

According to the final regulations, issued in December 1994, claims for cable and satellite carrier royalties are considered "timely filed" if they are hand-delivered to the Copyright Office during the month of July or arrive by mail with a July U.S. postmark. 37 C.F.R. §§ 252.4(a), 257.4(a). Claims arriving after July 31 and dated with only a business meter are not accepted as "timely filed." *Id.* at §§ 252.4(c), 257.4(c). However, a claimant may "nonetheless" establish that a claim bearing a

---

4. Copyright Act, as amended by the Satellite Home Viewer Act of 1988, 17 U.S.C. §§ 111(d)(1)-(3), 119(b)(1)-(3).

5. The Copyright Act specifies that "[d]uring the month of July in each year, every person claiming to be entitled to statutory license fees for secondary transmissions shall file a claim with the Librarian of Congress ...." 17 U.S.C. § 111(d)(4)(A); *see also id.* at § 119(b)(4)(A). The claimant "shall file [its] claim ... in accordance with requirements that the Librarian of Congress shall prescribe by regulation." *Id.* at § 111(d)(4)(A); *see also id.* at § 119(b)(4)(A)

6. Pub.L. 94–553, § 101, 90 Stat. 2541, 2555, 2594–96. *See Nat'l Ass'n of Broadcasters v. Copyright Royalty Tribunal*, 675 F.2d 367, 371 (D.C.Cir.1982).

7. Pub.L. No. 103–198, §§ 2–6, 107 Stat. 2304, 2304–13 (1993).

business meter mark was timely filed, even if received after July 31, if it was sent in a specified manner and the applicant can provide a certified mail receipt bearing a July U.S. Postal Service date-stamp. *Id.* at § 252.4(e) ("In the event that a properly addressed and mailed claim is not timely received . . . a claimant may nonetheless prove that the claim was properly filed if it was sent by certified mail, return receipt requested, and the claimant can provide a receipt bearing a July date stamp of the U.S. Postal Service . . . . No affidavit of an officer or employee of the claimant, or of a U.S. postal worker will be accepted in lieu of a receipt."); § 257.4(e) (same).

In comments to the final rules, the Copyright Office explained the significance of a U.S. postmark under the regulations:

> The statute requires that [a] claim be with the Librarian during the month of July, arguably meaning in his possession. However, we accept the submission of a claim to the U.S. Postal Service, as statutorily sufficient, providing it bears a July U.S. postmark. The postmark is an acknowledgment that the claim was validly tendered with the U.S. Government in the month of July.

59 Fed.Reg. 63025, 63039 (Dec. 7, 1994). The Copyright Office specifically quoted the longstanding position of the Copyright Royalty Tribunal to the same effect:

> [We do] not believe that our insistence that either a claim be received in our office during July or that it bear a July U.S. postmark is too restrictive. The claim itself is easy to prepare. No government forms are necessary. The information that is required can be put on one page. Further, the claimant has six months from the close of the calendar year to prepare it, and the entire month of July to submit it. . . . Our proposed

rule provides a bright line test which should end all questions of fact regarding the timeliness of the claim.

*Id.* (quoting 54 Fed.Reg. 12614, 12615 (Mar. 28, 1989)). This point was emphasized by comments published by the Copyright Office in 1996 in connection with a technical amendment to the rules. Technical Amendments, 61 Fed.Reg. 63715, 63716, 63718 (Dec. 2, 1996). At that time, the Office advised that "[t]he only acceptable proof of a timely filing . . . is the certified mail return receipt bearing a U.S. Postal Service mark demonstrating that the mailing occurred during the relevant time period . . . ." *Id.* at 63716.

Despite the apparent clarity of these regulations and commentary, the Copyright Office has on occasion accepted mailed claims that were not received in July when the claimant could not produce a certified mail receipt:

> Recently, the Copyright Office reviewed a request for reconsideration of a claim which the Office received on August 1, 1995[,] with only a business meter postmark. After further consideration of the facts, the Office has decided to accept all properly addressed claims with only a business meter postmark if they were actually in the Copyright Office on August 1, 1995, since the Office has an absolute assurance that these claims must have been deposited with the U.S. Postal Service during the month of July in order to reach the Office by August 1, 1995. The Office, however, will not accept any properly addressed claim with only a July business meter postmark which arrives in the Office on August 2, 1995, or later, because the absolute assurance of a July mailing with the U.S. Postal Service does not apply.

*In re King Broadcasting Co. (KTVB–TV),* A.R. Tab N at 0406.[8]

### B. *Factual Summary*

Universal expends a small fortune and great effort each year creating and developing copyrighted programming that is then retransmitted. Pltfs.' Stmt. of Material Facts as to Which There is No Genuine Dispute ¶ 1 ("Pltfs.' Facts"). Universal has filed claims for cable and satellite royalties in each year that such royalties have been available, and such claims have typically involved millions of dollars in royalties. *Id.* ¶ 2. The following facts are not in dispute and are taken from Defendants' Statement of Material Facts As To Which There Is No Genuine Dispute ("Defs.' Facts") and Plaintiffs' Opposition to Defendants' Statement of Material Facts As To Which There Is No Genuine Dispute.

- Universal's claims for the year 2000 were delivered to the Copyright Office by certified mail on August 3, 2001, in an envelope bearing a July 30 business meter mark, but which was not postmarked by the U.S. Postal Service.

- On November 13, 2001, the Copyright Office returned Universal's claims with a cover letter noting that, because they had not been received during July and did not bear a July U.S. postmark, they had not been timely filed.

- Further, the Copyright Office informed Universal that it would accept and process its claims "**ONLY** if you can provide proof that the claim was properly addressed and had a July postmark of the U.S. Postal Service." A.R. Tab B at 0011 (emphasis in original).

- Universal responded on November 29, 2001, with the following evidence of its timely submission:

  a. A declaration by a Pitney–Bowes employee stating that the postage meter used to date the envelope in which Universal's claims had been mailed "is a secure machine that cannot be backdated or otherwise manipulated by the end user." A.R. Tab C at 0037.

  b. The declaration of a Universal mail clerk that, according to his records, the certified mail envelope containing Universal's claims was delivered to the local Post Office, and the white sender's receipt was returned to the Universal mail room, whereupon he would have returned the receipt to the person or the department within the company that originated the letter.

  c. A photocopy of the green return receipt indicating that Universal's claims were received on August 3, 2001, by the Postal Service's Southwest Station in Washington, D.C.

  d. A declaration by a Customer Service Representative at the Postal Service's Processing and Distribution Center in Santa Clara, CA, and information from the USPS website, indicating that the normal time for delivery of first-class mail sent from Universal

---

8. The Copyright Royalty Tribunal accepted a claims filing from Brissette TV of Odessa, Inc., when it was timely mailed but returned "due to lack of an adequate address." *In re Brissette TV*, A.R. Tab L at 0392. Based on Brissette's representation and its history of timely filing, the Copyright Royalty Tribunal accepted the claims application that was received long after August 1, 1993. The statutory amendments that abolished the Copyright Royalty Tribunal and transferred its responsibilities to the Librarian, Register, and arbitration panels caused the Copyright Office to announce that it would administer "a radically different approach for ... distributing royalties" under the new law and that it did not consider itself merely "a successor agency" to the Copyright Royalty Tribunal. Notice of Proposed Rulemaking, 59 Fed.Reg. 2550, 2551 (Jan. 18, 1994). In the same Notice, the Copyright Office stated that it did not consider itself bound by the Tribunal's precedents. *Id.*

City, CA to Washington, D.C. is three to five days.

e. Copies of the certifications executed by Universal's General Counsel, originally attached to Universal's claims.

● Universal's submissions did not include a certified mail receipt for its claims date-stamped in July by the U.S. Postal Service.

● Universal submitted a letter dated November 29, 2001, to the Copyright Office, asserting that it "ha[d] not been able to locate the white [sender's] receipt," A.R. Tab C at 0025, and instead citing the evidence summarized above as proof that its claims were mailed on July 30, 2001. In the alternative, Universal asked that the Copyright Office waive the rules.

● Counsel for Universal submitted a memorandum to the Copyright Office on February 20, 2002, reiterating Universal's position that its submission complied with the applicable laws and regulations or, in the alternative, that the Copyright Office should "relax or modify" the rules. A.R. Tab E at 0068. In addition, counsel asserted that denying Universal's claims would violate due process.

● Universal submitted additional evidence to the Copyright Office on June 5, 2002, showing that 100 envelopes mailed from Van Nuys, California, to Washington, D.C. had taken at least three days to arrive.

● On December 2, 2002, the Register issued her decision rejecting Universal's request to accept its claims as timely filed. The Register found that Universal's claims arrived on August 3, 2001 in an envelope bearing only a July 30 business meter mark, and that Universal had thereafter failed to produce a certified mail receipt for its claims with a July date stamp by the U.S. Postal Service. The Register denied Universal's request for a waiver.

● On these grounds, the Register rejected Universal's claims for year 2000 royalties.

This lawsuit was filed seeking review of the Register's decision.

## LEGAL STANDARDS

Under the APA, 5 U.S.C. § 706(2)(A), agency action will be reversed if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." [9] *Id.; see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413–15, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).[10] As the Supreme Court has explained, "[T]he scope of review under the

9. Universal argues, in part, that the Register's decision is not supported by substantial evidence. *See, e.g.*, Memorandum of Points and Authorities in Support of Plaintiffs' Cross–Motion for Summary Judgment and in Opposition to Defendants' Motion to Dismiss or for Summary Judgment at 24 ("Pltfs.' Motion"). "The substantial evidence test applies, though, only in cases where 'an agency hearing [is] provided by statute[,]' " a circumstance that does not exist in this case. *Mich. Citizens for an Indep. Press v. Thornburgh*, 868 F.2d 1285, 1291 n. 6 (D.C.Cir.1989) (quoting 5 U.S.C. § 706(2)(E)). This is largely a matter of semantics, as the two standards of review, *i.e.*, 'substantial evidence' and 'arbitrary and capricious,' "require equal levels of scrutiny." *Mem. Hosp./Adair County Health Ctr. v. Bowen*, 829 F.2d 111, 117 (D.C.Cir.1987).

10. The Copyright Office asserts that this Court does not have jurisdiction to review challenges to the claims filing regulations because the filing requirements "involve[] a matter committed to agency discretion by law." Defendants' Motion to Dismiss or for Summary Judgment at 25 ("Defs.' Motion"). Because the Court upholds the validity of the agency's action on the merits, it does not address this argument.

'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park*, 401 U.S. at 415, 91 S.Ct. 814. However, "[w]hile this standard is deferential, courts do not hear cases merely to rubber stamp agency actions. To play that role would be tantamount to abdicating the judiciary's responsibility under the Administrative Procedure Act." *Conservation Law Found. v. Evans*, 209 F.Supp.2d 1, 8 (D.D.C.2001) (internal quotation omitted).

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), FED. R. CIV. P. 56(c). Summary judgment is not a "disfavored legal shortcut[;]" rather, it is a reasoned and careful way to resolve cases fairly and expeditiously. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C.Cir.1994). Any factual dispute must be capable of affecting the substantive outcome of the case to be "material" and "genuine." *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Laningham v. United States Navy*, 813 F.2d 1236, 1242–43 (D.C.Cir.1987).

## ANALYSIS

There is no dispute that Universal's claim for the year 2000 arrived on August 3, 2001, that it was postmarked by a Pitney–Bowes business meter and not by the U.S. Postal Service, and that Universal cannot produce a white receipt from USPS proving that it was mailed in July 2001. The undecided issues are (1) whether Universal complied with the filing requirements; (2) whether the Copyright Office should have waived the deadline; or (3) whether the Copyright Office has deprived Universal of constitutional due process.

### A. Compliance with Filing Requirements

■ The Copyright Act requires that claimants, "during the month of July," must file claims with the Librarian of Congress "in accordance with requirements that the [Copyright Office] shall prescribe by regulation." 17 U.S.C. §§ 111(d)(4)(A), 119(b)(4)(A). The requirements are simple and unambiguous. It was not arbitrary or irrational for the Copyright Office to continue the Tribunal's "bright line test" that "achieves greater efficiency" and avoids "problems with late filed claims," 53 Fed. Reg. at 43900, in order to "eliminate all questions of fact regarding the timeliness of claims." 59 Fed.Reg. at 63039.

Universal asserts that "there is no doubt that Universal complied with the statutory deadline by depositing its claims with the Postal Service during the month of July." Reply Memorandum of Points and Authorities in Support of Plaintiffs' Cross–Motion for Summary Judgment at 2 ("Pltfs.' Reply"). This argument fails because there is no support for the proposition that, standing alone, mailing is sufficient. The regulations provide that mailed claims are timely if "[t]hey are addressed to: Copyright Arbitration Royalty Panel, P.O. Box 70977, Southwest Station, Washington, DC

20024, *and* are deposited with sufficient postage with the United States Postal Service *and* bear a July U.S. postmark." 37 C.F.R. §§ 252.4(a)(2), 257.4(a)(2) (emphasis added).[11] Thus, the Copyright Office does not merely require mailing of claims in July to be timely, but mailing in July *with a U.S. Postal Service postmark*. It is insufficient merely to drop a properly addressed claim in a blue Postal Service mailbox located on the side of the road at 11:59 p.m. on July 31. One additional thing needs to occur: a Postal Service employee or machine must mark the envelope with a July postmark. Without doubt, Universal's year 2000 claims filing did not meet these requirements and Universal acknowledges this fact.

Universal argues that its additional evidence can prove that it "deposited its claim with the Postal Service before the end of July." Pltfs.' Motion at 6. This additional evidence, it argues, brings it within the regulatory escape-hatch found at 37 C.F.R. §§ 252.4(e), 257.4(e) because the regulations "do not state that other, more probative evidence [than the stamped receipt] cannot be considered." Pltfs.' Motion at 7. Because Universal is challenging the Register's interpretation of a Copyright Office regulation, this Court must give "controlling weight"[12] to the Register's interpretation, "unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the [Register's] intent at the time of the regulation's promulgation.'" *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (quoting *Gardebring v. Jenkins*, 485 U.S.

415, 430, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988)); *see also Tozzi v. U.S. Dept. of HHS*, 271 F.3d 301, 311 (D.C.Cir.2001); *Associated Builders & Contrs., Inc. v. Herman*, 166 F.3d 1248, 1254 (D.C.Cir. 1999). Acceptance of only a return-receipt stamped by the Postal Service in July, and nothing more, completely fits within this regulatory scheme. The comments to the regulations consistently emphasize the necessity of a postmark as proof of timely filing in the overarching regulatory scheme. *See* 59 Fed.Reg. 63025, 63039 (Dec. 7 1994) (Rejecting suggestion to allow July mailing from Mexican and Canadian post offices and noting that "we accept the submission of a claim to the U.S. Postal Service, as statutorily sufficient, providing it bears a July U.S. postmark."). The comments to the technical amendments further evince that the Register's present interpretation and exclusion of other evidence is consistent with the intent of the regulations. *See* 61 F.R. 63715, 63716 ("[T]he only acceptable proof of a timely filing, however, is the certified mail return receipt bearing a U.S. Postal Service mark."). Given the deference owed an agency's interpretation of its own regulations, the Court finds that the Register acted neither arbitrarily nor capriciously when she declined to accept Universal's additional proof and found that Universal had failed to file its claim within the month of July.

### B. *Waiver*

The Copyright Office may waive the rules on timely filing but refused to do so for Universal's year 2000 royalty claim.

---

11. In contrast, the first rules adopted by the Copyright Tribunal provided that a claim would be deemed "timely filed" if it were "deposited with the U.S. Postal Service... prior to the expiration of the statutory period." 43 Fed.Reg. 24528, 24529 (June 6, 1978).

12. *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945).

Universal argues that the Register abused her discretion by refusing to waive timely filing because (1) the Copyright Office has applied its rules inconsistently and has failed to provide a reason supported by substantial evidence for treating Universal differently than other applicants and (2) Universal should have received a waiver in the interest of fairness. An agency's grant or denial of a waiver of its regulations is reviewed for abuse of discretion. *See Green Country Mobilephone, Inc. v. FCC,* 765 F.2d 235, 238 (D.C.Cir.1985); *see also Omnipoint Corp. v. FCC,* 213 F.3d 720, 723 (D.C.Cir.2000) (Denial of waiver will not be overturned "unless the agency's reasons are so insubstantial as to render that denial an abuse of discretion."). To succeed on a claim of disparate treatment in the context of waivers, a claimant "must demonstrate that the [agency's] action was 'so inconsistent with its precedent as to constitute arbitrary treatment amounting to an abuse of discretion.'" *Lakeshore Broad., Inc. v. FCC,* 199 F.3d 468, 476 (D.C.Cir.1999) (quoting *New Orleans Channel 20, Inc. v. FCC,* 830 F.2d 361, 366 (D.C.Cir.1987)).

### 1. Consistency in Applying the Rules

Universal points to *NLRB v. Washington Star Co.,* 732 F.2d 974, 976 (D.C.Cir. 1984), as support for its argument that the Register abused her discretion in rejecting Universal's filing as untimely. *Washington Star* stands for the not-unusual proposition that it is impermissible for an agency to inconsistently apply a deadline and then refuse to waive the deadline in the instance of a late filer who has acted in good faith and without prejudice to others.

> If the Board articulates its reasons for a strict rule that requires filings to be in hand on the due date and announces that it will apply this rule uniformly or with specific stated exceptions then this court would be obliged to defer to the

Board's discretion and authority. Under such circumstances, there would be no reason not to enforce the Board's order on request. The present sometimes-yes, sometimes-no, sometimes-maybe policy of due dates cannot, however, be squared with our obligation to preclude arbitrary and capricious management of the Board's mandate.

732 F.2d at 977; *see also id.* ("Given the Board's record of inconsistent application of the filing deadline, we find the decision of the Board here puzzling to the point of arbitrariness."). The question, therefore, is whether the Copyright Office's practice amounts to enforcement of a "strict rule that requires filings to be in hand on the due date ... with specific stated exceptions," *id.* at 977, or whether the Office "has invoked the rule inconsistently [and] has not treated similar cases similarly." *Green Country,* 765 F.2d at 237.

#### a. Absolute Assurance Rule

■ Universal first argues that the "absolute assurance" rule, which arises from *In re King Broadcasting Co. (KTVB–TV),* AR Tab. N at 0406, shows that the Office has inconsistently applied its regulations. In *King Broadcasting,* the Copyright Office announced that it would accept, as timely filed, claims that are received no later than August 1 of each year even if they lack a U.S. Postal Service postmark. This rule does not run afoul of *Washington Star.* The court in *Washington Star* explicitly noted that it would be "obliged to defer to the Board's discretion and authority" in those instances where the agency adopted a "specific stated exception" to an otherwise strict rule. *Washington Star,* 732 F.2d at 977. In *King Broadcasting,* the Office adopted a specifically stated exception, within which Universal's claim admittedly does not fall.

While acknowledging that the Copyright Office limits its "absolute assurance" rule to claims received on August 1,[13] Universal argues that there is no basis for distinguishing claims that arrive from North Carolina on August 1 from claims that arrive from California on August 3. Universal asserts that it has presented the Copyright Office with "overwhelming and uncontested evidence" that it mailed its claim for year 2000 during the month of July 2001. Pltfs.' Motion at 21. This evidence includes the results of an empirical test that allegedly prove that it takes at least three days for a letter sent from California to arrive in Washington, D.C.[14] Universal further argues that, through its rule, the Copyright Office has engaged in fact-finding and has made unsupported "conclusory assertions ... that a letter cannot travel to the Copyright Office's post office box in Washington, D.C. in a single day." Pltfs.' Motion at 25.

In making its August 1 policy determination, the Copyright Office permissibly relied on common sense and experience to determine that mail is not delivered from any location in the United States, including across town in Washington, D.C., to a post office box in Washington, D.C. on the same day it is postmarked. The Court defers to the Copyright Office's discretion and authority in noting this fact and developing a corresponding exception. This does not require the Copyright Office thereafter to evaluate individualized evidence to determine whether a particular claim sent from a particular location could have reached the Office in a particular number of days. This Court will not require the Copyright Office to hire statisticians to evaluate the reliability of a claimant's empirical test, or to engage in protracted fact-finding or geographic line-drawing when assessing the timeliness of claims. Such an inquiry would undermine the identified policy concerns supporting the Copyright Office's refusal to accept a filing one day late—the need for clarity, predictability, and efficiency that its "bright line" rule assures. The "absolute assurance" rule does not provide support for Universal's claim of inconsistent application of the timeliness regulations.

Even if the Court were to accept Universal's argument that the rule shows inconsistency by the Copyright Office, Universal has failed to establish that it is similarly situated to claimants whose claims arrive on August 1. No individualized fact-finding is necessary to determine that a properly addressed claim bearing a business meter postmark that is received in the Copyright Office on August 1 was initially deposited with and processed by the Postal Service in July. Because individualized fact-finding is necessary to determine when claims received after August 1 were initially deposited with and processed by the Postal Service, Universal's argument that its claim received on August 3 is similar to claims received on August 1 fails. The Copyright Office's refusal to treat it as similar was not arbitrary and capricious.

13. *King Broadcasting*, A.R. 0406 ("The Office, however, will not accept any properly addressed claim with only a July business meter postmark which arrives in the Office on August 2, 1995, or later, because the absolute assurance of a July mailing with the U.S. Postal Service does not apply.").

14. In conducting this test, Universal sent 100 certified letters from the Van Nuys Post Office in California to the post office in Washington, D.C., where the Copyright Office's box is located. Universal asserts that the test revealed that of the 100 letters sent, 54 were received in 3 days, 31 were received in 4 days, and 15 were received in 5 days. None of the letters was received in fewer than 3 days. Pltfs.' Facts ¶ 14.

### b. Individual Instances of Exceptions

██ Universal next points to two individual cases where the Copyright Office accepted claims as timely filed, even though the claims were received after August 1 and the claimants could not produce a properly stamped certified mail receipt. Universal asserts that its filing is no different than those that the Copyright Office accepted as timely and that the Copyright Office has failed to explain adequately its reasons for treating Universal differently. The first case occurred in 1994, when the Copyright Office initially assumed responsibility for processing claims from the Tribunal. The claim at issue was sent from Columbus, Georgia, arrived at the Copyright Office on August 3, and did not bear a July U.S. postmark. The sender produced a receipt that bore a handwritten date (rather than a USPS date stamp). The Copyright Office argues that it accepted this claim as timely because "the Postal Service does not require a postmark on the certified mail receipt [and because] the CRT would have accepted the claim." A.R. 0634. The second case involved a claim mailed from Joplin, Missouri that arrived in the Copyright Office after August 1. The claimant produced a receipt but it had not been dated by the Postal Service in the usual manner. The Copyright Office contends that a staff person, rather than the Register, decided to accept this claim as timely.

These two instances do not provide support for Universal's argument that the Copyright Office has failed to apply its regulations regarding timeliness of claims

in a consistent and evenhanded manner. The first example involved a transition-year decision to accept claims that the Tribunal would have accepted as timely. The administrative record does not reveal any subsequent cases where the Office accepted an untimely claim because the Tribunal would have done so, showing that this decision did not establish agency precedent. In addition, the claimant in that situation, filing with the Copyright Office for the first time, is dissimilar to Universal, who has been filing applications with the Copyright Office for years.[15] Therefore, the decision to treat Universal dissimilarly was not arbitrary and capricious.

The undocumented decision in the Joplin case does not amount to an exception that the Copyright Office established, but only a decision by a staff person that is not binding on the agency. *See MacLeod v. Interstate Commerce Comm'n,* 54 F.3d 888, 891 (D.C.Cir.1995). In any event, in light of numerous instances of consistent application of the regulations, *see* A.R. Tabs O–V, the decision in the instant case is not "so inconsistent with its precedent as to constitute arbitrary treatment amounting to an abuse of discretion." *Lakeshore Broad. v. FCC,* 199 F.3d 468, 476 (D.C.Cir.1999).[16]

### 2. Universal's Individual Circumstances

██ ▪ Universal next argues that even if the Copyright Office has a policy of strictly enforcing its regulations, its refusal to grant Universal a waiver based on the individual circumstances of its case

---

15. That this was solely a transition-year decision is underscored by the Copyright Office's consistent rejection of applications that fail to comply with the regulations. *See* A.R. Tabs O–V.

16. The Court notes that the Copyright Office files apparently "included a number of late-

arriving petitions with July business meter dates where the applicants did *not* petition the Copyright Office to reconsider its initial decision to reject their claims." Pltfs.' Stmt. of Material Facts, Exh. 1 at 2. These materials were not included in the administrative record.

amounts to an abuse of discretion. Universal contends that denial of a waiver imposed an unduly harsh penalty for "misplacing an index-card-sized Postal Service receipt during a three[-]month period after the claim was mailed when mailrooms of Hollywood studios faced the upheaval of the anthrax scare." Pltfs.' Motion at 30.[17]

Universal cites *Washington Star*, 732 F.2d 974 (D.C.Cir.1984), as support for the argument that an agency abuses its discretion "when it refuses to waive a filing deadline in the context of a good faith attempt to comply and where there is a lack of prejudice to other parties." Pltfs.' Motion at 28. As discussed *supra*, *Washington Star* stands for the broader proposition that an agency abuses its discretion when it fails consistently to enforce its regulations, a circumstance that does not exist in this case.

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed.Cir.1995), also cited by Universal, gives no better answer. NTN challenged calculations by the International Trade Administration ("ITA") relating to antidumping duties. The ITA had sent NTN its preliminary determinations and NTN then identified clerical errors made by NTN in its own submission to ITA.[18] ITA refused to correct the errors in the materials originally submitted by NTN because the corrections were untimely and the errors were not obvious on the face of the timely filing. The errors in question occurred because "NTN had to input its data onto a computer readable format design of ITA" and, in the conversion process, "NTN personnel allegedly made typing errors in transcribing the business records." *NTN Bearing Corp.*, 74 F.3d at 1207. "Correction of NTN errors would neither have required beginning anew nor have delayed making the final determination." *Id.* at 1208. Universal makes the argument that rejection of its claim will not cause any disproportionate cost to the Copyright Office in conducting the fact investigation that it seeks. Universal equates its loss of millions of dollars in royalties for year 2000 to an "indefensibly harsh penalty" on the part of the Copyright Office and argues that the Register arbitrarily refused to waive the rules. Pltfs.' Motion at 30.

Universal and NTN share the same burden in the loss of millions of dollars if they were deemed to have filed untimely with an administrative agency. To that extent, *NTN Bearing Corp.* has relevance to this case and Universal's degree of loss cannot be totally ignored. Unfortunately for the movie studio, however, the similarity ends at that point. NTN submitted timely calculations, in the process of which it was required to re-format its own data to fit the government's form. ITA acknowledged that it would not have held NTN to the timely submission rule if it could have "determine[d] from existing information of record that an error was made." 74 F.3d at 1208. Since it would be impossible to determine on the face of a document that clerical errors caused

---

17. The Court is hard pressed to understand how the events of the anthrax scare that began in October 2001 could have impacted Universal's failure to safeguard its receipt. Crediting Universal's statement that it mailed the claim on July 30, the white sender's receipt presumably was delivered to Universal's mailroom at some point that same day or the next, or perhaps in early August 2001 and, by its own affidavit evidence, should have immediately been forwarded to the General Counsel's office. Compl. Exh. 2. Even if the loss of the receipt were due to an error by a mailroom employee in July or August, the Register has in a similar circumstances declined to grant a waiver. *See* A.R. Tab M.

18. NTN also challenged a substantive determination made by ITA, which is not pertinent to the instant case.

transposition of code numbers, the court found that ITA's distinction was arbitrary. *Id.* at 1208. Universal's circumstances are distinctly different: Universal's filing was not timely according to the regulations, no requirement from the Copyright Office contributed to Universal's timeliness problem, and the error was not an invisible clerical transposition but, more obviously, a missing document, albeit a small document. Universal failed to safeguard the white receipt from the Postal Service, a problem that cannot be traced to the Copyright Office or any "paradoxical" distinctions in its rules. *Id.*

As noted, Universal equates denial of its claim to a penalty for its loss of a piece of paper. Pltfs.' Motion at 30. The Court declines the invitation to view these facts as involving anything close to a penalty or sanction. This case presents a much more straightforward situation. Universal's loss of year 2000 royalties may be regretted but the Copyright Office did *not* impose a sanction when it determined that 'Universal simply had failed to comply with the statutory mandate to submit its annual claim "in accordance with the requirements that the Librarian of Congress shall prescribe by regulation." 17 U.S.C. §§ 111(d)(4)(A), 119(b)(4)(A). Universal has submitted timely claims applications for decades; the requirements are simple and well known; the Copyright Office has been clear and specific through formal rulemaking and consistent application; and other late claimants have been denied in the past. Just as the degree of Universal's loss cannot be totally ignored, it cannot transform an agency's adherence to its regulations into arbitrary action.

" '[S]trict adherence to a general rule may be justified … even if it appears to result in some hardship in individual cases.' " *BellSouth Corp. v. FCC,* 162 F.3d 1215, 1225 (D.C.Cir.1999) (quoting *Turro v. FCC,* 859 F.2d 1498, 1500 (D.C.Cir.1988)).

Universal also argues that the Register's decision to deny Universal a waiver is not supported by substantial evidence, and therefore violates the APA.[19] "[A]n agency's refusal to grant a waiver will not be overturned unless the agency's reasons are 'so insubstantial as to render that denial an abuse of discretion.' " *Green Country,* 765 F.2d at 238 (quoting *Thomas Radio Co. v. FCC.,* 716 F.2d 921, 924 (D.C.Cir. 1983)); *see also Omnipoint Corp. v. FCC,* 213 F.3d 720, 723 (D.C.Cir.2000). "[T]he agency's strict construction of a general rule in the face of a waiver request is insufficient evidence of an abuse of discretion." *Mountain Solutions, Ltd. v. FCC,* 197 F.3d 512, 517 (D.C.Cir.1999).[20]

In denying Universal's request for a waiver, the Copyright Office stated, *inter alia,*

Acceptance of Universal's claim here, however, would prejudice those claimants who timely filed their claims, and whose shares of the cable and satellite royalties would be reduced if Universal's untimely claims are accepted. It would also prejudice those claimants who, over the years, have had their claims denied under similar circumstances due to the Office's long-standing and consistent application of its rules. In addition, Universal did not do everything that was asked of it; it failed to provide proof of

---

**19.** As discussed earlier, this Court must determine whether the Register abused her discretion in refusing to grant Universal a waiver. *See supra* n. 7; *Green Country,* 765 F.2d at 238.

**20.** A denial may be an abuse of discretion when an agency is shown to have invoked a rule inconsistently. *See Green Country,* 765 F.2d at 237. However, the Court has already determined that predicate does not exist in the instant case.

the USPS July postmark. Without proof of a timely postmark, the Office cannot accept Universal's claims as timely .... Waivers of rules are appropriate "only if special circumstances warrant a deviation from the general rule and such deviation will serve the public interest." *Northeast Cellular Telephone Co. v. FCC*, 897 F.2d 1164, 1166 (D.C.Cir.1990) .... Universal has presented no such special or unique circumstances here that would warrant a waiver. Universal simply asserts that its claims were mailed in July via certified mail, return receipt requested, that the claims arrived within the ordinary delivery time for first-class mail sent from California to Washington, D.C., and that it is unable to locate the July date-stamped certified mail receipt. Furthermore, Universal refer[s] to its status as a long-time claimant whose claims are worth millions of dollars. None of these assertions constitute[s] special or unique circumstances .... Universal's predicament is not unique .... [G]ranting a waiver for Universal in such circumstances would be inconsistent with our long-standing practice and patently unfair to those similarly situated claimants whose claims have been rejected over the years .... Such an outcome would not serve the public interest.

A.R. Tab I at 0327–29.

The consistent importance the Copyright Office has placed on timely filing and its decision in the instant case are not arbitrary and capricious. *See Mountain Solutions*, 197 F.3d at 522 ("Because the Commission explained its reasoning in denying [the] waiver requests, gave fair notice of the importance it attached to meeting payment dates, and acted consistently under the then applicable procedures, we hold that it did not abuse discretion in denying [the] waiver request."). Univer-

sal's evidence of timeliness is similar to evidence provided in other cases in which the Register has denied a waiver. *See* A.R. Tabs O–V. The Copyright Office did not give Universal's request for a waiver perfunctory treatment. Rather, it carefully considered the request in light of the regulations and the public interest, found that Universal had not established circumstances justifying a waiver, and gave a "reasoned explanation for its decision." *P & R Temmer v. FCC*, 743 F.2d 918, 932 (D.C.Cir.1984); *see also Fla. Cellular Mobil Comm. Corp. v. FCC*, 28 F.3d 191, 200 (D.C.Cir.1994). The Register did not abuse her discretion when she denied Universal's request for a waiver.

## C. *Due Process*

■ For purposes of summary judgment, the parties are in agreement that Universal has a property interest in its claim to cable and satellite royalties for year 2000. Based on this property interest, Universal challenges the regulations under due process principles, asserting that "[b]y refusing to consider Universal's overwhelming evidence of timely filing, the Copyright Office runs afoul of this basic constitutional principle." Pltfs.' Motion at 37. The Register denied Universal's claims because, "[e]ven if ... claims were sent by certified mail on July 30, 2001, only the receipt, bearing a July date stamp by the USPS, is proof of a timely filing." A.R. Tab I at 0324. Universal argues,

Although Copyright Office went through the mechanics of providing a hearing by inviting Universal to submit proof that it filed its claims during the month of July, this process was totally devoid of a meaningful opportunity to be heard. The Copyright Office effectively disregarded all of Universal's proof and refused to consider any evidence other than the Postal Service receipt .... To

the extent the Copyright Office counters that it was simply acting pursuant to its filing regulations, which adopt a *per se* rule against considering any evidence other than the Postal Service receipt, then it is those regulations which violate Universal's right to due process .... A *per se* rule that excludes the only existing, probative evidence from consideration, although administratively efficient, is inadequate to provide due process.

Pltfs.' Motion at 36–37. The Register responds that Universal misconstrues the Copyright Act and its regulations by equating mailing with filing. Defs.' Reply at 37. The Register further argues, "[T]he fact that Universal wished to prove to the Register—that it mailed its claims on July 30, 2001—was simply not material under the regime established by the Copyright Act and the agency's implementing regulations." *Id.* at 39.

The Court agrees with the Register and finds no due process violation on these facts.

The Copyright Act requires that claims be "filed with the Librarian" in July of each year "in accordance with requirements that the Librarian of Congress shall prescribe by regulation." The regulations do not require that claims be mailed but allow mailing as one way to get claims to the Librarian. Similarly, the regulations do not provide that a claim is filed if it is mailed in July. Were that so, Universal's year 2000 claims would have, indeed, been "filed." Instead, the regulations state that claims that meet certain conditions will be deemed timely "filed with the Librarian" even if received after July 31, *i.e.*, if they have a date stamp by USPS during the month of July. The effect of the regulations, promulgated pursuant to notice and comment, is that those claims that arrive after July 31 and that do not have a July USPS date stamp have not met the conditions for being deemed timely.

The Register could, of course, have promulgated regulations that require actual receipt by the Librarian on or before July 31 for a timely filing. Such a regulation would be consistent with the statutory language that claims be "filed with the Librarian." It would, however, impose hardship on persons outside the immediate environs of Washington, D.C., especially those in remote locations whose mail service, while available, may not be predictable. For this reason, the Court views the regulation's willingness to rely on a USPS date stamp, adopted first by the Tribunal and continued in amended form by the Copyright Office, as a suitable compromise. A claim received after July 31 is plainly and simply late unless the sender can demonstrate that it has a July USPS date stamp either on the envelope or on the white sender's receipt portion of certified mail documentation. These longstanding deadlines operate with a conditional grace period. " 'Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.' " *Hamilton Sec. Group, Inc. v. Dept. of HUD*, 106 F.Supp.2d 23, 28 (D.D.C.2000) (quoting *United States v. Locke*, 471 U.S. 84, 100–01, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)).

Parties have a due process right to show that they are "within the statutory terms of eligibility." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Universal was given that opportunity. Universal acknowledged that its claim arrived after August 1 and that it could not submit a USPS date stamp to satisfy the conditions of the regulatory grace period. Its evidence of mailing was

**16**

not overlooked; it was found wanting in proof of compliance with the filing requirements. *See* A.R. Tab I at 0324 ("[R]egulations provide that the declarations of Mr. Lo and Ms. Diamond, as well as the certificate of mailing by Ms. Randal, which is tantamount to a declaration, cannot be considered in lieu of the receipt."), *id.* ("Even if a postage meter machine cannot be 'backdated or otherwise manipulated,' that does not provide the necessary confirmation that the USPS had possession of the claims envelope on July 30, 2001. At best, this information may serve to establish the date the meter mark was placed on the envelope."), 0326 (The empirical test results "are not relevant in a determination whether your filings have complied with the governing regulations."). The Copyright Office gave Universal the process to which it was constitutionally due.

### CONCLUSION

Universal has not shown that the Register violated the Copyright Act, the Administrative Procedure Act or the Constitution. Defendants' motion for summary judgment is **GRANTED** and Plaintiffs' Cross–Motion for Summary Judgment is **DENIED.**

A separate Order accompanies this Memorandum Opinion.

### ORDER AND JUDGMENT

For the reasons stated in the Memorandum Opinion separately and contemporaneously issued this 24th day of March, 2004, it is hereby

**ORDERED** Plaintiffs' Request for Oral Argument is **DENIED;**

**FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED;** and it is

**FURTHER ORDERED** that Plaintiffs' Cross–Motion for Summary Judgment is **DENIED;** and it is

**FURTHER ORDERED** that judgment is entered in favor of Defendants and against Plaintiffs.

**SO ORDERED.**