# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 16, 2006      Decided January 16, 2007

No. 05-1193

WESTAR ENERGY, INC. AND
KANSAS GAS AND ELECTRIC COMPANY,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

On Petition for Review of an Order of the
Federal Energy Regulatory Commission

*Martin J. Bregman* argued the cause and filed the briefs for petitioners.

*Judith A. Albert*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *John S. Moot*, General Counsel, and *Robert H. Solomon*, Solicitor.

Before: GINSBURG, *Chief Judge*, and TATEL and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

2

GINSBURG, *Chief Judge*: Westar Energy, Inc. and its subsidiary Kansas Gas and Electric Company (collectively Westar) sought permission from the Federal Energy Regulatory Commission to file corrected transmission data for 2001 after the December 31, 2002 deadline for doing so. The Commission denied the request, even though it had accepted another utility's similarly corrected filing after the deadline. Westar petitions for review, contending the Commission could not permissibly deny its request for a waiver of the deadline after it had allowed the other company to file late. Because the Commission did not meaningfully distinguish the prior case, we grant the petition for review and remand this matter for the Commission's further consideration.

## I. Background

The Commission is required by law to charge regulated entities an annual fee calculated to recoup its cost of regulating them. 42 U.S.C. § 7178. The fee charged a public utility is based upon its share of the megawatt-hours transmitted in interstate commerce by all public utilities. 18 C.F.R. § 382.201(a)-(b). The Commission requires each public utility to file a Form 582 by April 30 reporting the number of megawatt-hours it transmitted in interstate commerce in the preceding year and permits the utility to correct its report until the end of the calendar year in which the report was filed. *Id.* § 382.201(c).

On November 21, 2002 the Commission notified Kansas City Power and Light Company (KCPL) it had been selected for examination as part of an industry-wide audit of the annual fees assessed by the Commission. On August 14, 2003 the Commission issued its final report on the KCPL audit, which concluded the utility had overstated its transmission volume for 2001. The auditors recommended, and the Commission

accordingly ordered, that KCPL file a corrected Form 582 for 2001. The audit report also included a July 7, 2003 letter from KCPL noting it had reviewed a draft of the report, agreed with its findings and recommendations, and had submitted on March 3, 2003 — more than two months after the filing deadline and five months before the audit was completed — a Form 582 corrected "in accordance with the findings and recommendations outlined in the ... audit."

After learning about KCPL's erroneous filing and its belated correction, Westar reviewed its own filings and discovered that, because of errors similar to those made by KCPL, it too had overstated its transmission volumes. On December 18, 2003 Westar filed revised Forms 582 for both 2001 and 2002 and requested a waiver of the December 31, 2002 deadline for correcting the 2001 data. The Commission accepted the revised 2002 report but refused to accept the revised 2001 report because it was filed after the deadline. Westar sought rehearing, which the Commission denied, and then petitioned this court for review.

## II. Analysis

We will set aside a final decision of the Commission only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Commission's insistence upon strict adherence to its rules is, therefore, permissible unless its reason for refusing to waive a rule is arbitrary, capricious, or "so insubstantial as to render that denial an abuse of discretion." *Mountain Solutions, Ltd. v. FCC*, 197 F.3d 512, 517 (D.C. Cir. 1999) (quoting *Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 238 (D.C. Cir. 1985)).

A fundamental norm of administrative procedure requires an agency to treat like cases alike. If the agency makes an

exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases. *Green Country*, 765 F.2d at 237-38; *NLRB v. Washington Star Co.*, 732 F.2d 974, 977 (D.C. Cir. 1984); *cf. Colo. Interstate Gas Co. v. FERC*, 850 F.2d 769, 774 (D.C. Cir. 1988) ("[T]he Commission's dissimilar treatment of evidently identical cases ... seems the quintessence of arbitrariness and caprice").

When the Commission denied Westar's request for a waiver, it made four points: First, "the Commission's regulations expressly provide that corrections of the information filed on Form No. 582 must be made promptly, by the end of the calendar year in which the information was originally filed." Second, waiving the deadline would "require the recalculation and re-billing of annual charges" and "prompt other utilities to take the same action," thereby "undermin[ing] the certainty ... that annual charges would not be indefinitely subject to change." Third, Westar overreads a statement the Commission made in the course of denying a petition for rulemaking, *Midwest Indep. Transmission Sys. Operator, Inc.*, 103 F.E.R.C. ¶ 61,048, at 61,180 (2003) ("Should an audit reveal errors ... or should public utilities provide corrected data, the Commission adjusts the annual charges in the next fiscal year up or down, as appropriate"); the Commission never suggested it would "ignore the deadline expressly spelled out in its regulations." Finally, and most important for the present proceeding, the Commission said denying Westar a waiver was not inconsistent with its allowing KCPL to make a late filing, reasoning as follows:

> [T]he Commission's auditors delayed KCPL's filing because of their ongoing investigation. In those very different circumstances, where the Commission itself caused the late filing, it would have been inequitable to penalize the company. Westar, however, was subject to no such delay.

Westar correctly notes the Commission's first three points apply with equal force to Westar and to KCPL — indeed to all utilities regulated by the Commission. Any one of the three might, and the three taken together certainly would, explain a Commission policy never to accept a corrected Form 582 after the deadline specified by regulation; neither singly nor in the aggregate, however, do they explain why the Commission allowed KCPL but not Westar to make a late filing.

At oral argument, Commission counsel offered (for the first time) that the Commission's interest in finality was not adversely affected by KCPL's late filing because the Commission does not actually issue a bill, reflecting appropriate debits and credits associated with any corrected filings, until the summer — that is, until after it had received KCPL's revised filing but before it received Westar's. This explanation not only comes too late to save the Order denying Westar's late filing; it undercuts that Order insofar as the Order is based upon the Commission's purportedly strong interest in adhering to the end-of-year deadline enshrined in its regulation. If counsel is correct, then the Commission may have no sound objection to accepting corrections at least until the summer of the year after the initial filing was due — a matter of perhaps no small interest to the regulated industry.

Turning to the Commission's fourth and final point, Westar argues the record simply does not support the claim that the agency "itself caused [KCPL's] late filing." We agree; the Commission adduces not a shred of evidence to that effect. Indeed, the record suggests the opposite. KCPL noted that its revised Form 582 was "prepared in accordance with the findings and recommendations outlined in the ... audit," implying that KCPL would not have known of the error but for the audit, which — unless the audit was completed in relevant part and the results disclosed to KCPL between November 21, 2002 (when

KCPL was advised there would be an audit) and the December 31, 2002 deadline — suggests KCPL did not discover the error until after the deadline. Indeed, if it had discovered the error before the deadline, then presumably it also would have filed its revised Form 582 before the deadline rather than some two months later, on March 3, 2003 — unless, of course, the auditors told KCPL not to file until then, as the Commission's fourth point seems to claim.

In lieu of evidence to that effect in the record, however, we have only counsel's brief for the proposition that as the target of an audit KCPL "was subject to Commission internal scheduling and deadlines." Perhaps so — we do not know what they require because they are not in the record — but that hardly explains how "the Commission itself caused the late filing," which would require a showing that KCPL discovered or was made aware of its error before the deadline but was prevented by the audit process from submitting a revised Form 582 until after the deadline (though still months before the final report of audit).

At oral argument Commission counsel further suggested that an "audit situation by its very nature tolls" the deadline and that the Order implies as much; but we see no such indication in the Order and the record provides no other support for the assertion. Nor is it a logical necessity, for an audit need not culminate in requiring the target to file a retroactive correction; it could recommend only a prospective change in the company's controls or procedures in order to avoid a repetition of the error. *Cf.* OMB Circular No. A-133, Audits of States, Local Governments, and Non-Profit Organizations, 62 Fed. Reg. 35,278, 35,300 (June 30, 1997) (audit findings required to include "[r]ecommendations to prevent future occurrences of the deficiency identified in the audit finding"). This seems particularly plausible when retroactive correction would

compromise the Commission's apparent interest in finality. *Cf.* 7 C.F.R. § 210.8(b)(4) (upward adjustment of reimbursement claims for school lunch program resulting from audit authorized at discretion of overseeing State agency while downward adjustment "shall always be made ... regardless of when it is determined"). The Commission may, of course, allow an audit target to file a corrected report out of time and deny the same privilege to another company that made the same error but was not subject to an audit if it provides a meaningful distinction between the two situations, but it cannot justify doing so by claiming, as counsel does here, that extending a deadline is somehow inherent in the audit process. Another rationale is needed, and none is provided in the Order, even as glossed by Commission counsel.

Commission counsel also notes that KCPL was "ordered" (albeit only retroactively as far as the record reveals) to file a corrected Form 582 whereas Westar, not being subject to an audit, was not so ordered. We do not understand how this argument relates to the Commission's assertion that the relevant distinction between the companies is that "the Commission's auditors delayed KCPL's filing because of their ongoing investigation." In any event, insofar as this is a new argument crafted by counsel, we cannot consider it. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[C]ourts may not accept appellate counsel's *post hoc* rationalizations for agency action").

## III.  Conclusion

The Order under review is arbitrary and capricious in that it provides no basis in fact or in logic for the Commission's refusal to treat Westar as it had treated KCPL. Accordingly, the Order is vacated and this matter is remanded to the Commission for further proceedings consistent herewith.

8

*So ordered.*