# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 17, 2005          Decided April 8, 2005

No. 04-5138

UNIVERSAL CITY STUDIOS LLLP AND
UNIVERSAL CITY STUDIOS PRODUCTIONS LLLP,
APPELLANTS

v.

MARYBETH PETERS,
IN HER OFFICIAL CAPACITY AS REGISTER OF COPYRIGHTS, AND
COPYRIGHT OFFICE,
APPELLEES

———

No. 04-5142

METRO-GOLDWYN-MAYER STUDIOS, INC.,
APPELLANT

v.

MARYBETH PETERS, THE REGISTER OF COPYRIGHTS OF THE
UNITED STATES OF AMERICA,
APPELLEE

———

Appeals from the United States District Court
for the District of Columbia
(No. 03cv01082)
(No. 03cv00179)

———

*Randolph D. Moss* argued the cause for appellants Universal City Studios, et al. With him on the briefs were *Thomas P. Olson*, *Edward N. Siskel*, and *Brian M. Boynton*.

*David E. Kendall* argued the cause for appellant Metro-Goldwyn-Mayer Studios, Inc. With him on the briefs was *Vidya S. Atre*.

*James J. Gilligan*, Attorney, U.S. Department of Justice, argued the cause for appellees Marybeth Peters, et al. With him on the brief were *Peter D. Keisler*, Assistant Attorney General, *Kenneth L. Wainstein*, U.S. Attorney, *Gregory G. Katsas*, Deputy Assistant Attorney General, and *Mark B. Stern*, Attorney.

Before: SENTELLE and ROBERTS, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: Cable and satellite companies are required to pay royalties into a common fund when they retransmit certain copyrighted television broadcasts. To collect from the fund, copyright owners must file claims with the Copyright Office annually during the month of July. In 2001, Metro-Goldwyn-Mayer Studios (MGM) and Universal City Studios had their claims rejected as untimely because they could not produce a stamped postal receipt showing that the claims, which were received at the Copyright Office in August, had been mailed in July. The studios challenged the rejections in the district court and now appeal a grant of summary judgment for the Copyright Office. We affirm.

**I**.

Congress has established a compulsory licensing scheme for broadcast copyrighted material that is retransmitted by cable and satellite companies. *See* 17 U.S.C. §§ 111, 119 (2000); *Nat'l Ass'n of Broadcasters v. Librarian of Congress*, 146 F.3d 907,

910–13 (D.C. Cir. 1998) (summarizing statutory framework). Under this arrangement, cable and satellite companies are permitted to retransmit broadcasts of over-the-air television programming, provided that they deposit royalty fees with the Copyright Office for eventual distribution to copyright owners. Copyright owners, in turn, must file their claims for royalties "[d]uring the month of July in each year" and "in accordance with requirements that the Librarian of Congress shall prescribe by regulation." *Id.* §§ 111(d)(4)(A), 119(b)(4)(A). Royalties are distributed proportionally by means of settlement agreements among the various claimants or arbitration. *See* Distribution of 1998 and 1999 Cable Royalty Fund, 68 Fed. Reg. 17,838 (Apr. 11, 2003).

Copyright Office regulations specify that a claim will be considered timely if the claim (1) was actually received by the Office during July, or (2) bears a July U.S. postmark and was sent via the United States Postal Service. 37 C.F.R. § 252.4(a) (2001). The regulations also expressly state that "[c]laims dated only with a business meter that are received after July 31, will not be accepted as having been timely filed." *Id.* § 252.4(c). There is an exception to that provision, however, specifying that if a claim was sent using certified mail return receipt requested and the claimant can produce a mailing receipt bearing a July U.S. Postal Service date stamp, the claim will be accepted as being timely filed. *Id.* § 252.4(e). The regulations provide that "[n]o affidavit of an officer or employee of the claimant, or of a U.S. postal worker will be accepted in lieu of the receipt." *Id.*

The facts at issue are straightforward. MGM and Universal are film and television production studios based in southern California. MGM's royalty claims for the year 2000 arrived at the Copyright Office on August 2, 2001. The envelope was sent by certified mail and bore only a stamp from a Pitney Bowes business postage meter. Universal's claims arrived the next day, also by certified mail and bearing only a Pitney Bowes postage

meter stamp. Both studios estimate the value of their claims in the millions of dollars.

The studios heard nothing from the Copyright Office until November 2001, when each received word that their claims would not be accepted unless they could produce a receipt with a July U.S. Postal Service date stamp. Even at this remove, we can sense the intensity of the searches that these letters must have precipitated, but neither studio was able to locate a receipt. Lacking a receipt, the studios mobilized their lawyers. They separately responded with letters arguing that their claims were timely filed because they had been mailed during July, which was all the studios understood the Office's rules to require. They submitted sworn statements from the employees responsible for mailing the claims, stating that the letters were mailed on July 30, 2001. In addition, they presented declarations from Postal Service employees about the normal delivery time for a letter sent from southern California to Washington, D.C. (three to five days) and statements from Pitney Bowes employees attesting that the machines used by the studios are tamper-proof. Universal later supplemented its initial submission with the results of an in-house experiment showing that none of one hundred letters sent to Washington from Van Nuys, California arrived in fewer than three days — suggesting that its own claim, which arrived on August 3, must have been sent during July. In the event the Office interpreted its rule to require a postal receipt, each studio also requested a waiver.

The Copyright Office reached a final decision rejecting the studios' claims on December 2, 2002. It interpreted its rules to require a stamped USPS receipt for all claims received after the end of July that do not bear a U.S. postmark. The Office dismissed the evidence submitted by the studios, pointing to the regulations' express bar on considering affidavits from claimant or Postal Service employees "in lieu of the receipt." *See* 37 C.F.R. § 252.4(e). Moreover, it rejected the studios' waiver

requests on the ground that they presented no "special or unique circumstance . . . that would warrant a waiver." Letter to Olson & Moss, Dec. 2, 2002, at 6; Letter to Tunberg, Dec. 2, 2002, at 5.

The studios filed complaints in the district court alleging that the Office had acted in violation of the Copyright Act, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. The court found no merit to these contentions and, in two separate opinions, granted summary judgment for the Office. *Metro-Goldwyn-Mayer Studios, Inc. v. Peters*, 309 F. Supp. 2d 48 (D.D.C. 2004); *Universal Studios LLLP v. Peters*, 308 F. Supp. 2d 1 (D.D.C. 2004). The studios appeal.

## II.

The studios present several challenges to the Office's rejection of their claims. First, MGM, but not Universal, argues that the Office has incorrectly interpreted its regulations regarding timely submission of claims. Second, both studios argue that the denial of their waiver requests was arbitrary and capricious because the Office has not consistently enforced its regulations regarding timely filing. Third, the studios argue that the Office violated due process by refusing to accept any evidence, other than a stamped postal receipt, that their claims were mailed in July. We review *de novo* the district court's grant of summary judgment. *Williams v. United States*, 396 F.3d 412, 413 (D.C. Cir. 2005).

**A.** MGM argues that the Office's insistence on a postal receipt, and exclusion of all other evidence of a July filing, is "incompatible" with the Copyright Act and the implementing regulations. The regulations do not, it argues, categorically bar consideration of other evidence. MGM Br. at 25. On the contrary, it maintains, the regulations' specific exclusion of affidavits from claimant employees and postal workers implies

that other evidence *will* be considered. In addition, MGM relies on the language of section 252.4(e), which states that a claimant "may" prove proper filing by means of a stamped receipt, to argue that the requirement is only permissive and that claimants may prove proper filing by other means as well. *See* 37 C.F.R. § 252.4(e).

This is quite a stretch. The rules make clear that claims arriving after July that do not bear a U.S. postmark will not be accepted unless the claimant can produce a stamped receipt. Section (c) states the general rule very clearly: "Claims dated only with a business meter that are received after July 31, will not be accepted as having been timely filed." *Id.* § 252.4(c). Section (e) provides for the one and only exception to this rule for claims without a U.S. postmark: "[i]n the event that a properly addressed and mailed claim is not timely received by the Copyright Office," claimants "may nonetheless prove" proper filing using a receipt. *Id.* § 252.4(e). In other words, the rule is only "permissive" in that it allows claimants their one means of escaping the consequences of section (c).

Similarly, the provision excluding certain affidavits cannot fairly be understood to imply that the Copyright Office is required to consider other evidence. The regulations' evident purpose is to exclude precisely the kind of factual inquiry MGM seeks. *See* Copyright Arbitration Royalty Panels; Rules and Regulations, 61 Fed. Reg. 63,715, 63,716 (Dec. 2, 1996) ("The only acceptable proof of a timely filing . . . is the certified mail return receipt bearing a U.S. Postal Service mark demonstrating that the mailing occurred during the relevant time period to the appropriate address."); Copyright Arbitration Royalty Panels, 59 Fed. Reg. 63,025, 63,039 (Dec. 7, 1994) (postmark requirement "provides a bright line test which should end all questions of fact regarding the timeliness of the claim"). The express exclusion of the sort of evidence most likely to be submitted in lieu of a receipt — far from opening the door to other eviden-

tiary submissions — was simply a way to "make assurance double sure." WILLIAM SHAKESPEARE, MACBETH act 4, sc. 1.

An agency's interpretation of its own rules is entitled to "substantial deference" and will be set aside only if "plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (citation omitted); *see also Carus Chemical Co. v. EPA*, 395 F.3d 434, 439 (D.C. Cir. 2005). That is certainly not the case here; we have no basis on which to set aside the Office's reading of the pertinent regulations to bar the studios' claims as untimely.

**B.** MGM and Universal next argue that the Copyright Office's failure to waive its rules and accept their claims was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see* 17 U.S.C § 701(e). In making this claim, the studios run up against another highly deferential standard. While an agency is required to consider a waiver request, *see BellSouth Corp. v. FCC*, 162 F.3d 1215, 1224 (D.C. Cir. 1999), we will disturb a denial of waiver only when "the agency's reasons are so insubstantial as to render that denial an abuse of discretion," *BDPCS, Inc. v. FCC*, 351 F.3d 1177, 1181–82 (D.C. Cir. 2003) (citation omitted). An "agency's strict construction of a general rule in the face of waiver requests is insufficient evidence of an abuse of discretion." *Omnipoint Corp. v. FCC*, 213 F.3d 720, 723 (D.C. Cir. 2000) (citation omitted).

The studios principally argue that the Copyright Office failed to apply an established policy of accepting claims where it could be assured the claim was in fact mailed in July. For its part, the Office acknowledges a policy of accepting all claims that arrive by mail on August 1, but denies any more extensive waiver policy. The pertinent policy is set out in a 1995 Copyright Office letter:

> [T]he Office has decided to accept all properly addressed claims with only a business meter postmark if they were actually in the Copyright Office on August 1, 1995, since the Office has an absolute assurance that these claims must have been deposited with the U.S. Postal Service during the month of July in order to reach the Office by August 1, 1995. The Office, however, will not accept any properly addressed claim with only a July business meter postmark which arrives in the Office on August 2, 1995, or later, because the absolute assurance of a July mailing with the U.S. Postal Service does not apply.

Letter to Artis, Aug. 23, 1995, at 1; *see also* Letter to Adams, Aug. 23, 1995, at 1. MGM and Universal argue that — given the declarations submitted by them and Universal's delivery-time experiment — the Office has the same "absolute assurance" their claims were mailed during July as it has for claims arriving on August 1.

The Office, however, gave a more than adequate explanation why its policy does not apply. In referring to its having an "absolute assurance," the Office did not commit itself to conducting case-by-case inquiries into the factual circumstances of each claim submission. Rather, its "decision applies a bright-line test . . . and does not require the Office to rely on extrinsic evidence or to engage in determining the probability that a claim was mailed in July." Letter to Olson & Moss, at 7. The Office's "absolute assurance" refers instead to its confidence that *every* claim arriving on August 1 was mailed in July, without the need for *any* inquiry concerning the circumstances of mailing. The policy expressly states, after all, that the Office will *not* accept claims arriving on August 2 or later — a qualification clearly at odds with the studios' more expansive understanding of the policy.

The studios also seek refuge in several anomalies in the Office's handling of claims from a decade ago. MGM finds one

instance in 1993 in which the Copyright Royalty Tribunal, which formerly handled royalty claims, accepted a late-filed claim from a claimant named Brissette TV.[1] Brissette's claim had been returned for an insufficient address, even though the same address had effected delivery of its claims in prior years. Universal points to two other instances of waiver. In one, occurring in 1994, the Office agreed to accept a postal receipt with a handwritten date, rather than an official date stamp. In the other, a Copyright Office staff person accepted a claim after conferring with an employee of the Joplin, Missouri post office, from which the claim had been mailed, about a receipt that "had not been dated by the Postal Service in the usual manner." Letter from Gilligan to Kendall & Atre, June 13, 2003, at 1.

We cannot see how these episodes rendered the Office's denial of waiver an "abuse of discretion." *BDPCS, Inc.*, 351 F.3d at 1181–82. First, it is not at all clear that any of them are indicative of the Office's current policies. The Brissette case was handled by a different administrative body altogether. Since it first started handling royalty claims in 1993, the Copyright Office has insisted that "it is not the successor agency or office to the Copyright Royalty Tribunal." Copyright Arbitration Royalty Panels; Rules and Regulations, 59 Fed. Reg. 2550, 2551 (Jan. 18, 1994). As far as handwritten receipts are concerned, the regulations were revised in 1996 to require an official date stamp — a policy the Office has consistently applied since. 61 Fed. Reg. at 63,716–17; *see, e.g.*, Letter to Freeman, Feb. 17, 1999, at 1 (rejecting receipt with handwritten date). In the Joplin case, about which little is known, the staff person's decision to confer with the post office was apparently

---

[1] The Copyright Royalty Tribunal handled cable and satellite royalty claims until 1993, when that responsibility was transferred to the Copyright Office. *See* Copyright Royalty Tribunal Reform Act of 1993, Pub. L. 103-198, 107 Stat. 2304.

unauthorized, and accordingly cannot rise to the level of agency precedent.[2] *See Vernal Enterprises, Inc. v. FCC*, 355 F.3d 650, 661 (D.C. Cir. 2004) ("staff error cannot bind an agency and force it, in effect, to continue such errors").

Second, even if these instances in fact represent current Office policy, they hardly cover the present cases. Two involved receipts that were handwritten or improperly stamped. There is an obvious difference between considering the manner in which a submitted receipt has been executed and overlooking the complete absence of one. In the Brissette case, the claimant was given a one-time break because of its reliance on an address that had worked in previous years. Nothing of the sort is involved here; the present cases go instead to the core of a rule clearly intended to preclude case-by-case inquiries into the time of mailing. Granting a waiver based on the perceived strength of the evidentiary submission in a particular case would deprive such a rule of all force.

The studios ran a considerable risk by mailing their claims, presumably, in the last days of July; they ran another risk by failing to have their claims postmarked by the U.S. Postal Service. None of this would matter had the studios been able to locate the required receipts, but they have been unable to do so. We would not go so far as the Motion Picture Association of America and urge claimants to guard receipts "with your life," but the consequences of being unable to produce them were clear. Kessler Memorandum, June 13, 2001, at 7. The regulations gave the studios three different ways to establish the timeliness of a claim — actual receipt in July, July U.S. postmark, or July date-stamped postal receipt. The studios' three strikes hardly suggest the kind of "special circumstances" that

---

[2] While the Brissette waiver is set out in a letter from the Copyright Royalty Tribunal, details of the Joplin and handwritten-date waivers are known only through the recollections of Office personnel.

might warrant waiver. *Northeast Cellular Tel. Co. v. FCC*, 897 F.2d 1164, 1166 (D.C. Cir. 1990).

**C.** Finally, the studios contend that the Office violated their due process rights. There can be no question that the Office gave the studios a meaningful opportunity to be heard concerning whether their claims satisfied the Office's regulations, including the postal receipt requirement. *See Coalition of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1188 (D.C. Cir. 2004). The studios' due process challenge instead focuses on the receipt requirement itself. Their argument proceeds from the premise that the critical issue is whether they mailed their claims in July; the studios then contend that the Office has improperly restricted the means by which a claimant may prove such timely mailing, in violation of due process.[3]

This argument is entirely unpersuasive. MGM and Universal can rightly claim a property interest in the royalties to which they are entitled by law. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Bloch v. Powell*, 348 F.3d 1060, 1068 (D.C. Cir. 2003). They are entitled, however, to nothing if they do not meet the terms of eligibility under the statute and its implementing regulations. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 60–61 (1999). The studios assume that they are entitled to royalties if they can prove they mailed their claims in July, but this "misconstrues the Copyright Act and its regulations by equating mailing with filing." *Universal Studios*,

---

[3] The studios present their due process arguments differently. Universal argues that only the "substantive" provisions of the Copyright Act, and not the "procedural proof-of-filing rule," define the scope of its property interest. Univ. Br. at 54–55. MGM argues that the regulations create an unconstitutional irrebuttable presumption that a claim was not properly filed absent a stamped postal receipt. MGM Br. at 31–32. For our purposes, these arguments amount to the same thing.

308 F. Supp. 2d at 15; *see* 17 U.S.C. §§ 111(d)(4)(A), 119(b)(4)(A) (claimants must file "[d]uring the month of July in each year" *and* "in accordance with requirements that the Librarian of Congress shall prescribe by regulation").  As the Supreme Court recently confirmed, "due process does not require the opportunity to prove a fact that is not material to the . . . statutory scheme."  *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003).  Under the regulations, the studios are not entitled to royalties on a claim that arrives in August without a July U.S. postmark or a stamped postal receipt, regardless of how compelling the proof may be that the claim was mailed in July.  The regulations themselves — all of them — define what constitutes proper filing, under the express terms of the statute. *See United States v. Locke*, 471 U.S. 84, 103 (1985).  And under those regulations, the studios are out of luck.

*Affirmed*.