# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 4, 2015          Decided August 11, 2015

No. 14-1142

COPLEY FUND, INC.,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

———

On Petition for Review of an Order
of the Securities & Exchange Commission

———

*Paul M. Honigberg* argued the cause for petitioner. With him on the briefs was *Philippe M. Salomon*.

*Stephen G. Yoder*, Senior Counsel, Securities and Exchange Commission, argued the cause for respondent. With him on the brief were *Michael A. Conley*, Deputy General Counsel, *John W. Avery*, Deputy Solicitor, and *William K. Shirey*, Assistant General Counsel.

Before: BROWN, SRINIVASAN and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

2

SRINIVASAN, *Circuit Judge*: Copley Fund, Inc., a mutual fund regulated by the Securities and Exchange Commission, asked the Commission for an exemption from rules governing the calculation and reporting of Copley's deferred tax liability. The Commission denied Copley's exemption request, and Copley now seeks review in this court. Copley's arguments fail to carry the high burden required to overturn the Commission's denial of an exemption. We therefore deny Copley's petition for review.

I.

Copley is an open-end mutual fund, meaning that it issues redeemable securities to its shareholders. 15 U.S.C. § 80a-5(a)(1). Nearly all open-end funds elect to be treated as "regulated investment companies" under subchapter M of the Internal Revenue Code, 26 U.S.C. §§ 851, *et seq*. If a fund makes that election, the fund itself avoids corporate taxation for capital gains and dividends associated with its holdings as long as it satisfies certain conditions, including that it distribute at least 90% of its taxable income to shareholders each year. *Id*. §§ 851-55, 860. The tax liability then rests with the shareholders rather than with the fund.

Copley, unlike most open-end mutual funds, has never made a subchapter M election. Copley therefore is subject to taxation at both the fund and shareholder levels. The potential advantage of such an arrangement, as described by Copley, is that a shareholder incurs no tax liability in connection with the fund's holdings until she ultimately redeems her shares. Copley itself, however, must pay corporate tax at the fund level each year on any capital gains and dividends attributable to securities in its portfolio.

The dispute in this case arose because the market value of Copley's portfolio appreciated significantly from the time Copley originally purchased the securities in its fund. As a result, Copley would face a significant amount of unrealized federal income tax liability if it were forced to sell its appreciated holdings. The Commission maintains that the applicable rules require Copley to calculate, and report, its deferred tax liability based on the amount of tax Copley would owe if its entire stock portfolio were to be liquidated. In Copley's view, the Commission's approach unduly inflates the amount of deferred tax liability it must recognize. Copley therefore seeks an exemption from the operation of two Commission rules.

The first rule, Rule 22c-1, concerns the calculation of a fund's "net asset value," 17 C.F.R. § 270.22c-1(a), which in turn affects the price paid to redeeming shareholders. Because Copley is an open-end fund, its investors have a statutory entitlement to redeem their shares at any time in exchange for a "proportionate share of [Copley's] current net assets," *i.e.*, the fund's net asset value. 15 U.S.C. §§ 80a-2(a)(32), 80a-5(a)(1). Rule 22c-1 implements the requirement that the redemption price paid to a shareholder must equal an allocable share of the fund's net asset value: "[n]o registered investment company issuing any redeemable security . . . shall . . . redeem . . . any such security except at a price based on the current net asset value of such security." 17 C.F.R. § 270.22c-1(a). A related rule, Rule 2a-4, provides that, when determining net asset value, "[a]ppropriate provision shall be made for Federal income taxes if required." *Id.* § 270.2a-4(a)(4). Additionally, the redemption price must be determined in a manner that treats redeeming and non-redeeming shareholders equally, such that the price paid to liquidating shareholders does not result in an unfair dilution

of the value of the securities still held by non-redeeming shareholders. *See* 15 U.S.C. § 80a-22(a).

The second Commission rule from which Copley seeks an exemption, Rule 4-01 of Regulation S-X, governs the manner in which a fund reports its deferred tax liability on its financial statements. Under that rule, "[f]inancial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles [GAAP] will be presumed to be misleading or inaccurate, despite footnote or other disclosures, unless the Commission has otherwise provided." 17 C.F.R. § 210.4-01(a)(1); *see* 15 U.S.C. §§ 80a-8, 80a-29.

Copley historically recognized only a small percentage of its total potential tax liability. Copley reasoned that, based on its actual experience with redemption requests, satisfaction of those requests on any given day would require selling no more than a small percentage of its stock portfolio. In 2007, however, the Commission's Division of Investment Management issued a letter to Copley expressing that Copley must recognize the total value of its potential tax liability. The Division of Enforcement later warned that it would ask the Commission to seek injunctive relief if Copley declined to comply. Copley then began to recognize the full value of its potential tax liability. Because a fund's net asset value depends in part on the amount of its tax liability, Copley's change in calculation of that liability in turn reduced its net asset value per share by more than 20%.

In September 2013, Copley formally sought an exemption from Rules 22c-1 and 4-01, concerning, respectively: (i) determination of the net asset value at which Copley's shareholders would be entitled to redeem their shares, which in turn depends on the amount of Copley's tax

liability; and (ii) reporting of Copley's tax liability on its financial statements. Copley proposed that it would account for and report only a small percentage of its tax liability (with the percentage equaling a given multiple of either the fund's historic average or its historic maximum redemption rate). According to Copley, its proposed alternatives would have resulted in it recognizing a tax liability equal to between 8% and 10% of its total potential tax liability.

On May 15, 2014, the Commission issued a notice expressing its preliminary view that Copley's exemption request should be denied. Copley Fund, Inc., Exchange Act Release No. 34-72,173, 2014 WL 1943920 (May 15, 2014) (Notice). The Commission explained that a fund's net asset value equals the difference between its liabilities and its assets. Notice ¶ 7. Consequently, when a fund understates a liability (such as its tax liability), the fund's "net asset value will be overstated, as will the price at which the fund's redeemable securities are sold and redeemed." *Id.* And because an open-end fund must honor shareholder redemptions, a "high level of redemptions necessitating liquidation of a large portion of its portfolio" would result in disparate treatment of redeeming and non-redeeming shareholders. *Id.* ¶ 13.

In particular, the Commission explained, redeeming shareholders would "receiv[e] a price for their shares that reflects more than their pro-rata share of the net asset value of the Fund" (because their realized net asset value would not account for the full tax liability), "while the price of the shares held by the remaining shareholders would reflect less than their pro-rata share of the net asset value" (because accrual of the full tax liability upon redemption would be allocated to the remaining shareholders). *Id.* The Commission explained by way of example that, if 60% of Copley's shareholders

redeemed their shares on a given day and Copley had recognized only a fraction of its total tax liability per its proposal, the redeeming shareholders would have received a net asset value of nearly $14 per share as the redemption price while the non-redeeming shareholders would have been left holding shares with a diluted net asset value of less than $12 per share. *Id.* ¶ 14. Because that kind of disparate treatment would "produc[e] an unfair and inequitable result among Copley's shareholders," the Commission preliminarily declined to allow Copley an exemption from Rule 22c-1. *Id.* ¶ 15.

The Commission also declined to grant Copley an exemption from Rule 4-01's requirement to report deferred tax liability in accordance with GAAP in Copley's financial statements. Having determined that Copley must base its net asset value on its full potential tax liability, the Commission concluded that Copley's reporting of only a fraction of its total tax liability in its financial statements would be "unnecessarily confusing to investors and contrary to the policy behind the . . . disclosure requirements" of the Investment Company Act of 1940. *Id.* ¶¶ 4 n.6, 18.

On June 19, 2014, the Commission issued an order formally denying Copley's exemption request "for the reasons stated in the notice." Copley Fund, Inc., Investment Company Act Release No. IC-31,088, 2014 WL 2770563 (June 19, 2014). Copley now petitions for review of the Commission's denial of an exemption.

## II.

We review the Commission's factual findings for substantial evidence and "will set aside its legal conclusions only if 'arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law.'" *Wonsover v. SEC*, 205 F.3d 408, 412 (D.C. Cir. 2000) (citing 5 U.S.C. § 706(2)(A)) (internal punctuation omitted). Because Copley challenges the Commission's denial of an exemption, our review is "highly deferential." *Universal City Studios LLLP v. Peters*, 402 F.3d 1238, 1242 (D.C. Cir. 2005). We will set aside the Commission's denial of an exemption only if "the agency's reasons are so insubstantial as to render that denial an abuse of discretion." *Id.* (internal quotation marks omitted). The Commission did not abuse its discretion here.

Copley's primary argument is that the Commission's denial of an exemption was "based solely" on "hypothetical speculation" rather than on Copley's actual redemption history. Appellant Br. 37 (capitalization omitted). Noting that the highest daily redemption rate in Copley's thirty-six-year existence affected less than 6% of its then-outstanding shares, Copley asserts that the Commission erred in predicating its denial of an exemption on a hypothetical scenario contemplating shareholders' redemption of 60% of Copley's shares in one day.

Copley misunderstands the Commission's rationale. The Commission explained that, even though it knew of Copley's actual redemption history, Copley "cannot control or fully anticipate the level . . . of [future] shareholder redemptions." Notice ¶ 12. "However unlikely" a large redemption event "may seem to Copley," the Commission observed, such an event was "a possibility that Copley may not rule out," given the entitlement of Copley's shareholders to redeem their shares at net asset value. *Id.* And because a high level of redemptions could result in substantially disparate treatment of non-redeeming shareholders, the Commission determined that the grant of an exemption to Copley would run "counter to one of the primary principles underlying the Company

Act": that "redemptions of redeemable securities should be effected at prices that are fair, and which do not result in dilution of shareholder interests or other harm to shareholders." *Id.* ¶¶ 7, 13.

That rationale for the Commission's denial of an exemption lies comfortably within agency discretion. Indeed, the Company Act requires that a redemption price based on "net asset value" be calculated in a manner "eliminating or reducing" any "dilution of the value" of shares held by non-redeeming shareholders "which is unfair" to those shareholders. 15 U.S.C. § 80a-22(a).

Copley counters that a large redemption event would not necessarily generate a significant tax bill—if, for instance, the impetus to redeem shares came about in reaction to a stock market crash that also eliminated any gains in Copley's portfolio. The Commission's 60% scenario, however, was only an "illustrative fact pattern" used to highlight the disparate treatment of shareholders under a given set of circumstances. Notice ¶ 14. As the Commission notes on appeal—and Copley does not dispute—some degree of disparate treatment would occur "*whenever* Copley's actual tax liability exceeds its recorded partial deferred tax liability." Appellee Br. 33, 42 n.18. The Commission committed no abuse of discretion in invoking an example to illustrate that result.

Copley similarly takes issue with an article cited by the Commission for the proposition that "[r]edemptions necessitating liquidation of a substantial amount of an open-end fund portfolio, while infrequent, have in fact been experienced by several open-end funds." Notice ¶ 12 n.16. According to Copley, it is less likely to confront a substantial redemption event than the funds analyzed in the article

because it invests in a more liquid and diversified portfolio. But as with the 60% redemption scenario, the Commission referenced the article only for illustrative purposes. The Commission recognized that, "[h]owever unlikely" a large redemption event might be, Copley "cannot control or fully anticipate the level . . . of [future] shareholder redemptions." *Id.* ¶ 12. Copley's attacks on the Commission's "hypothetical speculation" thus afford no basis for setting aside the Commission's reasonable conclusion that Copley's proposal to provide for only a small fraction of its full potential tax liability may result in inequitable treatment of redeeming and non-redeeming shareholders, contradicting a primary purpose of the Company Act.

Copley's remaining arguments can be dispensed with in relatively short order. Copley contends that the Commission erred in "summarily reject[ing]" its offer to disclose in its financial statements the mechanics and operation of its proposed alternative methods for calculating its tax liability. Appellant Br. 45-46; J.A. 17. Copley's passing mention of its disclosure proposal took up a mere two sentences of its nineteen-page exemption application, *see* J.A. 17, and the Commission was "not required to address every argument advanced by" Copley in a cursory fashion. *Town of Barnstable v. FAA*, 740 F.3d 681, 690 (D.C. Cir. 2014) (internal quotation marks omitted). In any event, disclosure of Copley's proposed alternative calculations would not cure the Commission's substantive reasons for rejecting those alternatives in the first place—*i.e.*, the risk of inequitable treatment of shareholders and the unnecessary confusion to investors if Copley's financial reporting did not match the pricing of its securities.

Copley contends that the Commission's denial of an exemption is inconsistent with the flexibility the Commission

extended to certain real estate investment trusts (REITs) in accounting for their deferred tax liabilities. But "this is not a case in which the Commission . . . failed to explain its different treatment of similarly situated parties." *Mountain Solutions, Ltd. v. FCC*, 197 F.3d 512, 518 (D.C. Cir. 1999). Rather, the Commission reasonably distinguished its treatment of REITs, noting that REITs "are not open-end funds, do not issue redeemable securities and therefore do not face the associated potential need to sell portfolio assets to satisfy redemption requests." Notice ¶ 16 n.39.

Copley fares no better in arguing that the Commission failed to consider the "actual harm" to investors arising from Copley's 2007 adjustment to recognize its full potential tax liability. Appellant Br. 50 (capitalization omitted). The Commission expressly acknowledged the change in value to Copley's shareholders, noting that, "whereas Copley's net asset value per share on February 28, 2007 . . . was stated in its annual report as being $54.67," Copley's adjustment resulted in "a per share net asset value for that same date . . . of $42.54. The $12.13 reduction in the net asset value per share was a change of 22%." Notice ¶ 11 n.15 (internal quotation marks omitted). The Commission nonetheless declined to grant Copley an exemption from the requirement to recognize its full tax liability for the reasons explained. Because the Commission set forth its rationale and "considered" the relevant "objection[]," *Town of Barnstable*, 740 F.3d at 690, Copley's "actual harm" argument fails. Copley's contention that full recognition of its deferred tax liability causes a distortion of various financial metrics fails for largely the same reason: the change in those metrics is the direct and inevitable consequence of the Commission's reasonable decision to deny Copley an exemption from the obligation to recognize its full potential tax liability.

Finally, Copley argues that its proposal to recognize only a fraction of its full tax liability would not infringe the Commission's rules in the first place. The Commission's interpretations of those rules are not directly at issue because Copley, in 2007, altered its accounting to comply with the Commission's suggested understanding of the rules. J.A. 5. The question now before us concerns the Commission's denial of Copley's request for an *exemption* from the rules. As we have explained, the "very essence" of a request for exemption "is the assumed validity of the general rule, and also the applicant's violation" of that rule unless the exemption "is granted." *Omnipoint Corp. v. FCC*, 213 F.3d 720, 723 n.3 (D.C. Cir. 2000) (citation omitted). To the extent Copley means instead to contend that the Commission should have granted an exemption from its rules because the rules themselves are flexible enough to accommodate Copley's proposed alternatives, that argument essentially merges into Copley's underlying request for an exemption from the rules. We reject that argument for the reasons already discussed.

\* \* \* \* \*

For those reasons, and in light of the highly deferential manner in which we review the Commission's denial of the requested exemption, we deny Copley's petition for review.

*So ordered.*