# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-3698

_____

Automated Matching Systems Exchange, LLC

*Plaintiff - Appellant*

v.

United States Securities and Exchange Commission; Stephen Luparello, in his
official capacity as Director of the Division of Trading and Markets

*Defendants - Appellees*

_____

No. 15-2448

_____

Automated Matching Systems Exchange, LLC

*Petitioner*

v.

United States Securities and Exchange Commission; Stephen Luparello, in his
official capacity as Director of the Division of Trading and Markets

*Respondent*s

_____

Petition for Review of an Order of the
Securities & Exchange Commission

_____

Submitted: February 9, 2016
Filed: June 20, 2016

_____

Before SHEPHERD, BEAM, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Automated Matching Systems Exchange, LLC ("AMSE") appeals a final agency order by the Securities and Exchange Commission ("the Commission"), denying AMSE's application for a limited volume exemption from registration as a national securities exchange under § 5 of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78a et. seq., and the district court's[1] dismissal of AMSE's complaint for lack of jurisdiction. Finding that the Commission reasonably concluded that the Act does not permit an exempt exchange to operate with the self-regulatory powers AMSE proposed in its application, and that the district court lacked jurisdiction to consider AMSE's claims, we affirm.[2]

I.

In December 2013, AMSE began communicating with the Commission regarding AMSE's interest in applying for a limited transaction volume exemption from registration as a national securities exchange under §78e of the Act. It filed an application in March 2014. In April 2014, the Commission staff returned the

_____

[1]The Honorable Karen E. Schreier, United States District Court Judge for the District of South Dakota.

[2]Because this court is satisfied that the Commission reasonably denied AMSE's application for exemption, we need not determine whether AMSE may qualify as an "exchange."

application as defective. In May 2014, the Commission staff discussed with AMSE the return of its application and the Commission staff's concerns.

In June 2014, AMSE filed suit against the Commission and its Director of the Division of Trading and Markets in federal district court. In its suit, AMSE requested that the district court compel the defendants to "either grant [the] application or institute proceedings on why it should be denied." AMSE also filed a motion for a preliminary injunction requesting the same relief. Later in June 2014, the Commission staff and AMSE reached an agreement regarding the processing of AMSE's application. AMSE revised its application, and the Commission published the application for comment. In September 2014, AMSE filed an amended complaint with the district court. The Commission moved to dismiss the complaint and the district court granted the motion, concluding that there was no final order and that exclusive jurisdiction to consider such claims laid with the appellate court.

In October 2014, the Commission issued an order instituting proceedings to determine whether to grant or deny AMSE's revised application for exemption. SEC. Release No. 34-73419, 79 Fed. Reg. 64421-02 (Oct. 29, 2014). In the order, the Commission expressed concerns regarding whether the proposed model fit under the definition of "exchange," as used in § 3(a)(1) of the Act. In November 2014, AMSE filed amendments. In its application, AMSE referred to itself as a "self-regulatory organization" ("SRO") as defined in the Act and proposed to exercise a broad range of self-regulatory powers. In December 2014, the Commission published notice of the amendments for public comment. See A.R. 507-516. In the notice, the Commission stated that it was considering denial for the previously stated reasons and because AMSE's intention to exercise the broad powers of an SRO, while operating under the limited-volume exemption from registration, was contrary to the Act. A.R. 509-511. In response, AMSE submitted amendments changing the language to refer to AMSE as a "limited volume exempt regulatory organization," but not modifying its proposed powers in any way. A.R. 720-1004.

-3-

In June 2015, the Commission issued a final order denying AMSE's application for exemption. A.R.1014. The order identified AMSE's intention to "possess the broad regulatory powers and responsibilities that are reserved to [SROs], while simultaneously seeking exemption from registration as an exchange" as its "fatal flaw."[3] A.R. 1009, 1015. It noted that AMSE referred to itself in "terms that pertain only to SROs under the Act," including AMSE's statement that its rules would be filed under § 19(b) of the Act, which controls the filing of rules by an SRO. A.R. 1011. Further, AMSE's rules stated that "its disciplinary decisions and access decisions would be subject to agency review under the Act, where such review is available only for the activities of SROs under § 19 of the Act," and "implie[d] that it falls generally within the category of an SRO and that it would exercise authority as such." A.R. 1011. Notably, the Commission found that AMSE asserted that "its members would hold a status under the Act that is only conferred on members of SROs." A.R. 1011. Also concerning to the Commission was AMSE's proposal to require its members and associated persons "to recognize AMSE as being required to discipline them for violations of the Act, including through: expulsion; suspension; limitation of activities, functions, and operation; fines; censure; suspension or bar from association with an AMSE member; or any other sanction determined in AMSE's discretion for violations of the Act." A.R. 1014. The Commission concluded that the exercise of such powers by an exempt exchange would be inconsistent with the Act and public interest.

---

[3]The order also expressed concern whether AMSE's proposed business model would meet the definition of an exchange under § 3(a)(1) of the Act.

II.

A.

The Administrative Procedure Act provides that the Commission's legal conclusions are entitled to deference unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., we defer to an agency's reasonable interpretation of a statute that it is charged with administering if the statute is ambiguous, or the interpretation is consistent with the plain meaning of the statute. 467 U.S. 837 (1984). This means that "[i]f the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. If Congressional intent is not clear, the agency's reasonable interpretation of the ambiguous statute must control. Id. at 843.

Where a party challenges the Commission's denial of an exemption, our review is "highly deferential." Copley Fund, Inc. v. S.E.C., 796 F.3d 131, 135 (D.C. Cir. 2015). The court will "set aside the Commission's denial of an exemption only if the agency's reasons are so insubstantial as to render that denial an abuse of discretion." Id. (internal quotations omitted). "An agency's strict construction of a general rule in the face of waiver requests is insufficient evidence of an abuse of discretion." Universal City Studios LLLP v. Peters, 402 F.3d 1238, 1242 (D.C. Cir. 2005). "[W]e review de novo the district court's dismissal of an action for lack of jurisdiction." Kennedy v. Ferguson, 679 F.3d 998, 1001 (8th Cir. 2012).

B.

Because the Commission is charged with administering the Act and has shown consistency in its interpretation of it, we defer to the Commission's reasonable

interpretation.[4] See Chevron, 467 U.S. at 843-844. We find that the Commission's determination that it does not have the authority under the Act to permit an exempt exchange to exercise powers and responsibilities reserved for an SRO to be reasonable.

The Act controls what types of entities can operate as a securities exchange.[5] 15 U.S.C. § 78a, et seq. Under it, an exchange may operate if it "(1) is registered as a national securities exchange under section 78f of this title, or (2) is exempted from such registration upon application by the exchange because, in the opinion of the Commission, by reason of the limited volume of transactions effected on such exchange, it is not practicable and not necessary or appropriate in the public interest or for the protection of investors to require such registration." § 78e. Alternatively, an entity can register as a broker-dealer and comply with Regulation Alternative Trading System ("ATS"), exempting it from the definition of "exchange." Regulation of Exchanges and Alternative Trading Systems, 63 Fed. Reg. 70844-01 (Dec. 22, 1998).

When an exchange registers as a national securities exchange, it also becomes an SRO. § 78c(a)(26). As an SRO, Congress delegates it "certain quasi-governmental functions and responsibilities," "fundamental to the enforcement of the

---

[4]The Act's language provides strong support for the Commission's interpretation, but because the Commission's interpretation is reasonable, we will proceed assuming that the Act is ambiguous on this point.

[5]Under the Act, "[t]he term 'exchange' means any organization, association, or group of persons, whether incorporated or unincorporated, which constitutes, maintains, or provides a market place or facilities for bringing together purchasers and sellers of securities or for otherwise performing with respect to securities the functions commonly performed by a stock exchange as that term is generally understood, and includes the market place and the market facilities maintained by such exchange." § 78c(a)(1).

federal securities laws." 63 Fed. Reg. at 70881. A registered national securities exchange enforces compliance of its members and associated persons with its internal rules, as well as with federal securities laws and rules and regulations thereunder. § 78f(b)(6); § 78s(g)(1). It "must maintain procedures to surveil for securities law violations, such as insider trading and manipulation on the exchange" and examine its members for compliance with securities laws, Commission rules and regulations, and its own rules. 63 Fed. Reg. at 70881; § 78f(b). A registered national securities exchange must also discipline its members and persons associated with its members when it finds a violation. § 78f(b)(6)-(7). Its rules must address a variety of subjects and be designed to achieve certain goals. These subjects include membership, fair representation in governance, and burdens on competition. § 78f(b)(2)-(3), (8). The goals include prevention of fraudulent or manipulative acts and practices, promotion of trade, and prevention of unfair discrimination. § 78f(b)(5). The rules must not be designed to regulate matters unrelated to the purposes of the Act or the administration of the national securities exchange under the authority of the Act. § 78f(b)(8).

Because registered national securities exchanges, acting as SROs, wield such extensive and important powers, the Commission is statutorily obligated to exercise oversight. § 78f(b). This includes ensuring that registered national securities exchanges are capable of performing quasi-governmental responsibilities and that their self-regulation powers are exercised in a manner consistent with the public interest and protection of investors. § 78f(b)(1). In 1975, Congress amended the Act to ensure that registered national securities exchanges "follow effective and fair procedures . . . and that the Commission's oversight powers are ample and its responsibility to correct self-regulatory lapses is unmistakable." S. Rep. No. 94-75, at 23 (1975). This extensive oversight includes the ability to approve or disapprove proposed rule changes; abrogate, add or delete from a registered national securities exchange's rule; review a final disciplinary sanction imposed by a registered national securities exchange or a denial of access; and "suspend for a period . . . or to censure

-7-

or impose limitations upon the activities, functions, and operations" of a registered national securities exchange. § 78s(b)-(e), h(1), h(4).

If an entity meets the definition of "exchange," but wishes to operate without registering as a national securities exchange, it must either obtain an exemption as a limited-volume exchange or register as a broker-dealer and comply with Regulation ATS. 63 Fed. Reg. at 70848. Under the Regulation ATS alternative, the entity would be required to be regulated by an SRO. 63 Fed. Reg. at 70857 ("Any national securities exchange [choosing to operate as an alternative trading system] would, of course, be required to give up its SRO functions and privileges, and to register as a broker-dealer and become a member of a national securities association or other SRO."). An ATS may neither set rules governing conduct of subscribers other than their conduct trading on that system, nor discipline subscribers other than through exclusion from trading. 17 C.F.R. § 242.300(a)(2). Regulation ATS states that "any system exercising self-regulatory powers, such as regulating its members' or subscribers' conduct when engaged in activities outside of that trading system, must register as [a national securities] exchange or be operated by a national securities association [and] will not be permitted the option of registering as a broker-dealer." 63 Fed. Reg. at 70847. "This is because self-regulatory activities in the securities markets must be subject to Commission oversight under Section 19 of the Exchange Act." 63 Fed. Reg. at 70847.

The Commission has discretion to grant a limited-volume exemption if it finds that registration "is not practicable and not necessary or appropriate in the public interest or for the protection of investors to require such registration." § 78e. Limited-volume exchanges are not required to perform the quasi-governmental functions assigned to registered national securities exchanges. § 78f(b). And notably, they are not subject to the oversight provisions of § 78s. In the past 80 years, the Commission has only granted two such exemptions. See Wunsch Auction Order, S.E.C. Release No. 34-28899, 1991 WL 292060 (Feb. 20, 1991); Tradepoint Order,

S.E.C. Release No. 34-41199, 1999 WL 152920 (Mar. 22, 1999). The Commission has acknowledged "that the low volume exemption continues to be appropriate for some exchanges, such as an exchange that, for example, disciplines its members (other than by excluding them or limiting them from trading based on objective criteria, such as creditworthiness), or has other self-regulatory attributes that exclude it from the definition of alternative trading system, . . . and therefore preclude it from making the choice to register as a broker-dealer." 63 Fed. Reg. at 70848 n.33. Thus, the self-regulating powers available to an entity under the limited-volume exemption are, at a minimum, more expansive than those available to a broker-dealer.

Upon this foundation, we find that the Commission's determination that it did not have discretion to grant a low-volume exemption to AMSE because it proposed to act as an SRO was reasonable. The Commission reasonably concluded that an exempt exchange could not be an SRO[6] and that permitting an exchange to wield the broad powers of an SRO[7] when the Commission is not statutorily required to exercise

---

[6] § 78c(a)(26) (defining SRO as "any national securities exchange, registered securities association, or registered clearing agency").

[7] AMSE indicated in its application that it would provide status to its broker-dealer members only available to members of SROs. The Commission noted the ways in which AMSE proposed to regulate its members and their associated persons like an SRO: AMSE proposed to regulate its members with respect to training, experience, and competence; financial responsibility and operational capacity; the maintenance of books and records; business conduct; anti-money laundering compliance programs; extension of margin or credit; custody of customer funds or securities; fraud and manipulation; and compliance with broker best execution obligations. It also proposed to regulate the associated persons of its members and to require each member to establish, maintain, and enforce written supervisory procedures, enabling the member to supervise the activities of its associated persons and ensure their compliance with the securities laws, rules, regulations and statements of policy promulgated thereunder, as well as with AMSE's rules.

oversight[8] would contradict the careful balance prescribed by Congress to protect the public interest and investors. It reasoned, an entity with such power "could have a substantial impact on the way those members engage in the securities business and comply with the federal securities laws." The Commission's conclusion is consistent with the Commission's prior reading of the Act. See 63 Fed. Reg. at 70847. Further supporting its conclusion, the Commission noted that it had never before granted a low-volume exemption to an exchange proposing to exercise such powers.[9] We find that the Commission's conclusion is well-reasoned and does not constitute an abuse of discretion.[10]

---

[8]The Commission noted that it would lack its normal powers to "approve or disapprove the proposed rule changes, abrogate, add to, or delete from an exchange rule, review a final disciplinary sanction imposed by the exchange or any denial of access, suspend for a period not exceeding twelve months . . . or to censure or impose limitations upon the activities, functions, and operations of the exchange for specified misconduct, or remove from office or censure any officer or director of the exchange for specified misconduct." (internal citations omitted). AMSE volunteers to be bound by the same provisions, but this would only provide the Commission with oversight at AMSE's discretion.

[9]Only two such exemptions have been granted in the past 80 years, Tradepoint and Wunsch Auction. These exemptions were conditioned upon their agreement to enforce internal rules, but not the Act. See Tradepoint Order, 1999 WL 152920, at *4, *9 ("[I]f Tradepoint were to register as a national securities exchange under the Exchange Act, it would be required to become a self-regulatory organization, [and] to file copies of proposed rules with the Commission for approval or disapproval."); Wunsch Auction Order, 1991 WL 292060, at *3, *5, *6-*7 ("[T]he Commission believes that it would be so disproportionately burdensome to compel WASI to satisfy all of the regulatory requirements imposed upon registered national securities exchanges under the Act as to be impracticable.").

[10]AMSE also alleges that the Commission breached an implied duty of good faith by failing to "confer[] with applicants and make[] suggestions in appropriate cases for amendments and supplemental information." See 17 C.F.R. § 202.3(b)(2). AMSE fails to provide any authority indicating that such conferring is required or that

Finally, AMSE argues that the district court erred in determining that it did not have jurisdiction to hear AMSE's claims alleging procedural deficiencies in the Commission's work or AMSE's claim for a declaratory judgment. AMSE's first amended claim to the district court alleged that Commission staff contravened the Act by violating AMSE's "right" to confer with Commission staff and to "amend or supplement its application" accordingly. However, the Act states that "[a] person aggrieved by a final order of the Commission . . . may obtain review of the order in the United States Court of Appeals." § 78y(a)(1). See, e.g., N.Y. Republican State Comm. v. SEC, 799 F.3d 1126, 1132 (D.C. Cir. 2015) (finding that the United States Courts of Appeals hold exclusive jurisdiction to hear challenges to an order issued by the agency); Altman v. SEC, 768 F. Supp. 2d 554, 558 (S.D.N.Y. 2011) aff'd, 687 F.3d 44 (2d Cir. 2012) ("[The United States Courts of Appeals'] jurisdiction is exclusive."). As is the case here, "where a statute commits final agency action to review by the Court of Appeals, the appellate court has exclusive jurisdiction to hear suits seeking relief that might affect its future statutory power of review." Telecomm. Research & Action Ctr. v. FCC, 750 F.2d 70, 72 (D.C. Cir. 1984). Thus, the district court correctly found that it lacked jurisdiction. Additionally, AMSE's Count II claim for declaratory relief, asking the court to find that AMSE is an "exchange" or permitting it to operate without registering, would certainly interfere with this Court's jurisdiction and require the district court to make a determination that Congress has committed to the Commission. See § 78e (stating that a proposed exchange can be exempt if "in the opinion of the Commission . . . it is not practicable and not necessary or appropriate."). AMSE has failed to establish circumstances permitting for district court review.

---

the Commission had a responsibility to inform AMSE of the maximum self-regulatory powers that it could exercise while still qualifying for a low-volume exemption. The Commission reasonably concluded that its staff may identify when such conferring is appropriate. Further, Commission staff did consult with AMSE.

IV.

For the foregoing reasons, we deny AMSE's petition for review and affirm the district court's judgment. Additionally, this court denies AMSE's Motion to Supplement the Administrative Record and Second Motion to Supplement the Administrative record.[11]

———————————————————

[11] AMSE has failed to satisfy the court that the additional proposed evidence is both material and that there were reasonable grounds for failing to provide it earlier. 15 U.S.C. § 78y(a)(5).